**SILAS MASON CO., Inc., et al. v. HENNEFORD et al.**

No. E–4473.

District Court, E. D. Washington, N. D.

Aug. 3, 1936.

Graves, Kizer & Graves, of Spokane, Wash., for plaintiffs.

G. W. Hamilton, Atty. Gen., State of Washington, and R. G. Sharpe, Asst. Atty. Gen., State of Washington, for defendants.

Before HANEY, Circuit Judge, and WEBSTER and CAVANAH, District Judges.

CAVANAH, District Judge.

The United States, under an act of Congress (33 U.S.C.A. § 701 et seq.), is engaged in the construction of the Grand Coulee Dam, on the Columbia river, for the purpose of controlling floods, improving navigation, providing for the storage and delivery of stored water for the reclamation of public land, and generation of electrical energy. After receiving bids for the construction of the dam, which is one of unusual magnitude, a contract was, on July 16, 1934, entered into by the United States and the plaintiffs (other than the Mason-Walsh-Atkinson-Kier Company) whereby plaintiffs named agreed to furnish some of the materials and to perform work required for the construction of the naked dam and power plant in accordance with specifications of the Columbia Basin Project. Consideration of the contract was that plaintiffs were to receive $29,339,301.50 for the performance of the work and such materials as were to be supplied by them, and such additional amount caused by changes to be made in the plans and specifications by the United States, which has increased the amount of the agreed contract price by over $7,000,000.

The plaintiffs are nonresidents of the state of Washington, and have no other business and are not engaged in other operations in that state, than the construction of the dam, and are within the state solely for the purpose of discharging their contract obligations with the United States.

The defendants constitute the Tax Commission of the state of Washington and as such are demanding payment of and endeavoring to collect the tax which is the subject of the controversy.

The Legislature of the state of Washington, at the 1935 Session of the Legislature enacted a general revenue Act, chapter 180 Session Laws of Washington 1935 (page 706). By title 3 of that act (page 721, § 16 et seq.) it provided for a tax on retail sales within the state of Washington, and by title 4 for what is called a compensating tax, which is, in effect, a tax upon purchases of materials made by persons within the state of Washington, and in other states of the Union.

Claiming to act under authority of the act, the Tax Commission has adopted a number of rules and regulations relating to the various taxes provided by the act, and respecting title 4 (page 726, § 31 et seq.), the Tax Commission has by rule provided that the nature of the tax is a compensating tax and so enacted to supplement the retail sales tax, by imposing a like tax for the privilege of using within the state tangible personal property purchased at retail, subsequent to April 30, 1935, and with respect to which property, neither the sales tax nor the use tax of 2 per cent. has been imposed by the state of Washington or any other state, and the rules further provide that "the primary purpose of the compensating tax is to protect the merchants of Washington from discrimination arising by reason of the inability of the State, because of the Federal Constitution, to impose a tax upon sales made to residents of this State by competitive merchants in other states." Rule 178, p. 104.

Having then in mind the facts appearing in the complaint and affidavits presented and the provisions of the act, we find that prior to the enactment of the act, plaintiffs had purchased in other states than Washington, heavy equipment and machinery which were necessary for the construction of the dam under their contract. After considering the character of the work done, the frequent repairs and replacement of machinery required, which cannot be obtained within the state of Washington, but must be purchased in other states, during the months of May and June, 1935, plaintiffs purchased within the United States and outside of the state of Washington, equipment and machinery and other articles used in the construction of the dam, the purchase price of which was $899,390.91 plus transportation cost $21,798.43.

In the light of the facts, the requirements of the act and the regulations of the Commission, plaintiffs, by their complaint and affidavits assert that as against them, the provisions of title 4, chapter 180 of the Laws of Washington 1935, are illegal and unenforceable and that such tax be removed as a cloud upon the title of their personal property purchased by them outside of the state of Washington and that defendants be enjoined and perpetually restrained from enforcing and attempting to enforce the collection of such tax from them or by the sale of their property.

The reasons urged by plaintiffs as to the illegality of the tax as against them are:

First: That the construction of the dam upon which plaintiffs are engaged under their contract with the United States is a governmental work in the prosecution of

which the Executive Department of the United States is exercising a franchise granted by Congress to construct a dam across the Columbia river, a navigable stream, to the end that navigation may be improved and irrigation of public lands and flood control be effected, and that as the United States is in the exercise of the franchise and the prosecution of the governmental work the plaintiffs are employed as agencies and instrumentalities of the United States, and their property is exempt from the imposition of the tax.

We think that under the record before us this contention is not well founded, when we are confronted with the facts that the plaintiffs are nothing more than independent contractors performing work and furnishing materials for a definite price which the government has agreed to pay and they have agreed to accept under the contract obtained by competitive bids. Their relations to the government are contractual; they do not exercise governmental functions, as they only undertook to construct the dam according to plans and specifications, adopted by the government, for a profit to be made in so complying. In no way is the government affected by the fact that they pay or do not pay taxes or that they are a government instrumentality. The cases relied upon by plaintiffs are not applicable to the facts here for we find that most of them are based upon facts where the parties claiming exemption were either agents of the government or engaged as employees or officers of the government in the exercise of governmental functions. The authorities seem to agree that independent contractors with the government for gain cannot claim immunity from taxation by reason of furnishing material or labor to the United States. Susquehanna Power Company v. State Tax Commission of Maryland, 283 U.S. 291, 51 S.Ct. 434, 75 L.Ed. 1042; Broad River Power Co. v. Query et al., 288 U.S. 178, 53 S.Ct. 326, 77 L.Ed. 685; Trinityfarm Construction Co. v. Grosjean, Supervisor of Public Accounts of Louisiana, 291 U.S. 466, 54 S.Ct. 469, 78 L.Ed. 918; Six Cos., Inc., v. De Vinney, County Assessor (D. C.) 2 F.Supp. 693; Nevada-California Power Co. v. Ullom et al. (D.C.) 3 F.Supp. 934, 935; Rainier National Park Co. v. Henneford, 182 Wash. 159–163, 45 P.(2d) 617; General Construction Co. v. Fisher, 149 Or. 84, 39 P.(2d) 358–361, 97 A.L.R. 1252. Citations of similar import might

be multiplied many times, but those cited are enough to demonstrate beyond peradventure that under the record plaintiffs are not so situated as to urge that they are an agency or instrumentality of the United States exercising governmental functions in order to bring them under the rule of exemption of taxes.

Second: We come then to the real question in the case as to the constitutionality of the tax as against the plaintiffs. It is urged that the tax is levied against articles purchased outside of the state of Washington by plaintiffs because in the light of its history and present setting it is a deliberate attempt to tax articles purchased and brought in from another state, which is discriminating in its incidence against the articles because of their origin in another state. The Commerce Clause of the Federal Constitution (article 1, § 8, cl. 3) is invoked as it is asserted that the act attempts to regulate commerce between states, the power of which is in Congress. The provisions of the act in question, which are pertinent to our inquiry are section 31 (Laws Wash.1935, p. 726) : "There is hereby levied and there shall be collected from every person in this state a tax or excise for the privilege of using within this state any article of tangible personal property purchased subsequent to April 30, 1935. Such tax shall be levied and collected in an amount equal to the purchase price paid by the taxpayer multiplied by the rate of 2%." Section 33 (page 727) : "If any article of tangible personal property has already been subjected to a tax by this or any other state in respect to its sale or use in an amount less than the tax imposed by this title, the provisions of this title shall apply, but at a rate measured by the difference only between the rate herein fixed and the rate by which the previous tax upon the sale or use was computed." Section 35 (a) : "The term 'purchase price' shall mean the consideration paid or given or contracted to be paid or given by any person to the seller of an article or tangible personal property for the article purchased. The term shall include, in addition to the consideration paid or given or contracted to be paid or given, the actual cost of transportation from the place where the article was purchased to the person using the same in this state."

The terms of the act are that the tax is levied and collected on any article of tangible personal property in an amount equal

to the purchase price paid by the taxpayer multiplied by the rate of 2 per cent., whether the article is purchased within or without the state of Washington, and is termed a compensating tax. It levys an excise tax for the privilege of using within the state, any article of personal property purchased subsequent to April 30, 1935. It is obvious from the act and the provisions of the exceptions to its operations that it was intended to discriminate against articles brought in from other states in order to remove any competition with the merchants of the state of Washington. This appears by sections 32 (c), 33 and 35 (a) of the act (Laws 1935, pp. 726, 727), and in its practical operation when applied to those states other than the state of Washington who have, and those who do not have a sales tax. It is apparent that the discrimination appears, as the complaint discloses that twenty-three states of the Union have a sales tax and as an illustration of the practical operation of the Washington tax we find that Idaho has a 2 per cent. sales tax, Oregon has no sales or use tax. One purchasing property in Oregon cannot bring it into Washington unless he pays a 2 per cent. tax on the purchase price, plus transportation costs, while one who purchases property in Idaho destined to be used in Washington may bring the property into Washington and put it to use without paying the tax. A further illustration is that the state of Illinois has a tax like Washington, while Indiana has a tax of 1 per cent., therefore, articles purchased in Illinois may be brought into and used in Washington tax free, while the same articles purchased in Indiana must pay a tax of 1 per cent., the difference between the tax of the two states, plus the cost of transportation from Indiana to Washington. The discrimination more forcibly appears where the defendants under section 35 (a) have added $21,798.43 to the purchase price of the articles as transportation costs in other states which are subject to tax under the Washington act. Under the language of the act and the interpretation given to it by the Washington Tax Commission, both the Legislature and the Commission had primarily in mind removing from the shoulders of the merchants of Washington competitive disadvantage occasioned by the Washington sales tax and the absence of such a tax in other states. This thought is borne out, as far as the Commission is concerned, who is intrusted with the enforcement of the law, where

they have said in regulation 178: "Statement of the nature of the tax.—The compensating tax (title 4, section 31 et seq.) was enacted to supplement the retail sales tax by imposing a like tax for privilege of using within this state tangible personal property purchased at retail subsequent to April 30, 1935 (the effective date of the retail sales tax law) and in respect to which property neither a sales tax nor a use tax equal to 2% has been imposed by this or any other state."

"The primary purpose of the compensating tax is to protect the merchants of Washington from discrimination arising by reason of the inability of the state, because of the Federal Constitution, to impose a tax upon sales made to residents of this state by competitive merchants in other states."

When the validity of a state statute is challenged on the ground that it is repugnant to the Commerce Clause, we are not bound by the legislative declaration of purposes, because if the statute in its practical operation directly burdens or destroys interstate commerce, the act must fall. We must look to the practical consideration of the established course of business in determining what is interstate commerce. Shafer v. Farmers' Grain Co., 268 U.S. 189, 45 S.Ct. 481, 69 L.Ed. 909; Foster-Fountain Packing Company v. Haydel, 278 U.S. 1-10, 49 S.Ct. 1, 73 L.Ed. 147; Baldwin v. G. A. F. Seelig, Inc., 294 U.S. 511, 55 S. Ct. 497, 79 L.Ed. 1032, 101 A.L.R. 55. The courts are only concerned "with its practical operation, not its definition or the precise form of descriptive words which may be applied to it". Lawrence et al. v. State Tax Commission of Mississippi, 286 U.S. 276, 52 S.Ct. 556, 557, 76 L.Ed. 1102, 87 A.L.R. 374. If it bears upon commerce among the states as to amount to a regulation in a relatively immediate way, it cannot be upheld by name or form.

If the nature and effect of the tax levied by the act discriminates against articles purchased and brought in from other states and because of their origin in another state it is an attempt to regulate and a burden upon interstate commerce and would be inconsistent with the freedom of trade which Congress only has the power to regulate as between the states. It would seem unnecessary to city authorities in support of this well-known construction of the Commerce Clause of the Constitution, but see Hart Refineries v. Harmon, 278 U.S. 499, 49 S.Ct. 188, 73 L.Ed. 475; Baldwin

v. G. A. F. Seelig, Inc., 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032, 101 A.L.R. 55. With these principles in mind, and applying them to the record, it is apparent that the tax is discriminating in its incidence against articles because of their origin in other states, and that the Washington act was framed for the purpose of suppressing competition from without the state. Plaintiff had a right to go into other states without first obtaining the leave of the state of Washington for all legitimate purposes of commerce and the litigated statute which lays a burden on the exercise of that privilege is void as against the plaintiff under the Commerce Clause. Dahnke-Walker Milling Company v. Bondurant, 257 U.S. 282, 42 S.Ct. 106, 66 L.Ed. 239; Lemke, As Attorney General of the State of North Dakota et al. v. Farmers' Grain Co., 258 U.S. 50, 42 S.Ct. 244, 66 L.Ed. 458; Asher et al. v. Ingels (D.C.) 13 F.Supp. 654, 655.

The argument is pressed that the state may lawfully tax the "use" of tangible personal property brought in from other states without a violation of the Commerce Clause and the defendants rely principally upon the decision of the Supreme Court of the state of Washington where this tax was sustained by a majority opinion as against the contention that it offends the commerce clause, Vancouver Oil Co. v. Henneford, 183 Wash. 317, 49 P.(2d) 14. In that decision the state Supreme Court seemed to have based its decision upon the sole thought that the goods affected had come to rest within the state of Washington and not as we view it, whether the tax was discriminating in its incidence against the goods because of their origin in another state. If it is levied without regard to origin and the goods had come to rest in the state of Washington, it would be neither a regulation nor a burden of interstate commerce, but that is not the case under this act and the record before us, for, as has been said, it appears clear that the act was intended to levy a tax on articles purchased outside of the state of Washington, because of their origin, and by so doing it discriminates against such articles.

Tested by these considerations, we have reached the conclusion that the litigated act is violative of the Commerce Clause of the Federal Constitution as against the plaintiffs and that the motion to dismiss is overruled, and that an interlocutory injunction issue as prayed for in the complaint.

HANEY, Circuit Judge (dissenting).

The tax in question is imposed on "the privilege of using" in Washington, articles of personal property, and is a "use Tax." The validity of such taxes is not questioned except insofar as it may be said to conflict with the Commerce Clause of the Federal Constitution.

I cannot agree that the tax here laid discriminates against commodities because of their origin in another state. The statute (chapter 180, § 31, Laws Wash. 1935) levies the tax on the use of "any article of tangible personal property," and makes no distinction between articles, either because of the place of their origin or place of purchase. It is applicable to articles originating or purchased within the state of Washington as well as to those originating or purchased elsewhere.

The following section (section 32 (c), exempts from taxation "the use of any article of tangible personal property the sale or use of which has already been subjected to a tax equal to or in excess of that imposed by this title whether under the laws of this state or of some other state of the United States." Section 33 provides: "If any article of tangible personal property has already been subjected to a tax by this or any other state in respect to its sale or use in an amount less than the tax imposed by this title, the provisions of this title shall apply, but at a rate measured by the difference only between the rate herein fixed and the rate by which the previous tax upon the sale or use was computed." The effect of these two latter sections together with section 31 is to tax the use of all personal property, the sale or use of which has not already been taxed by any state, including Washington, to the extent of 2 per cent. of its purchase price. I see no discrimination in such a tax. As pointed out by defendants the articles exempt under the Washington sales tax law (see section 19, ch. 180, Laws 1935) even originating in Washington are subject to the use tax. See section 32 supra.

As to the universal applicability of the "use" tax, we might fairly consider the result had the Governor of Washington vetoed the sales tax (title 3, ch. 180, § 16 et seq., Laws of 1935). Under such circumstances it seems to me conclusive that the "use" tax provided for in section 31, supra, would have applied to the use of all

tangible personal property, irrespective of its place of origin.

Plaintiffs make no contention that the tax, as applied to them, is a tax on an instrumentality of interstate commerce, but contend that the tax is imposed directly upon interstate commerce, because in effect the tax is one on the goods themselves.

I am unable to agree with that argument, because the tax is on the "use" of the articles, not on the articles themselves. If the tax was one on the "use" of the articles while in interstate commerce, it might then be invalid, but there is no pleading nor proof in this case which authorizes such a conclusion. In fact, under the pleadings, it is shown that the articles were in interstate commerce until they reached their destination, at which point the articles were intended to be used in constructing the dam. When that destination was reached, the character of the goods as "interstate commerce" ended. Bacon v. Illinois, 227 U.S. 504, 33 S.Ct. 299, 57 L.Ed. 615. By reason of the presumption that a statute is valid, we must presume that the tax attached to the use of the goods after their movement in interstate commerce had ended.

I therefore believe the bill should be dismissed.