# HALLIBURTON OIL WELL CEMENTING CO. *v.*
## REILY, COLLECTOR OF REVENUE
## OF LOUISIANA.

No. 24.  Argued March 26–27, 1962.—Restored to calendar for reargument April 2, 1962.—Reargued December 3, 1962.—Decided May 13, 1963.

*Benjamin B. Taylor, Jr.* reargued the cause for appellant. With him on the briefs were *Robert O. Brown, C. Vernon Porter, Robert E. Rice, Laurance W. Brooks, Frank W. Middleton, Jr.* and *Tom F. Phillips.*

*Chapman L. Sanford* reargued the cause and filed a brief for appellee. With him on a motion to dismiss were *John B. Smullin* and *Emmett E. Batson.*

*Forrest M. Darrough* filed a brief for the Humble Oil & Refining Company, *Albert L. Hopkins* for the Chicago Bridge & Iron Company, and *Charles D. Marshall* for Thomas Jordan, Inc., as *amici curiae,* urging reversal.

*Ben R. Miller* filed a brief for the American Can Company, *Cicero C. Sessions* for Sperry Rand Corporation, and *Robert E. Leake, Jr.* for the Rosson-Richards Processing Company, as *amici curiae.*

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

The sole issue before us is whether the Louisiana use tax, as applied to the appellant, discriminates against interstate commerce in violation of the Commerce Clause of the Constitution.

The Louisiana sales and use taxes follow the basic pattern approved by this Court in *Henneford* v. *Silas Mason Co.,* 300 U. S. 577. Louisiana Revised Statutes, Tit. 47, § 302, provides for the imposition of a tax "[a]t the rate of two per centum (2%) of the sales price of each item or article of tangible personal property *when sold at retail in this state . . . .*" [1] It imposes another tax "[a]t the

---

[1] Emphasis added.

rate of two per centum (2%) of the cost price of each item or article of tangible personal property *when the same is not sold but is used . . . . in this state . . . .*" [2] This latter tax, commonly known as a use tax, is to be reduced by the amount of any similar sales or use tax paid on the item in a different State. La. Rev. Stat. Ann. § 47:305. As noted by the Louisiana Supreme Court below and approved in *Silas Mason*, the purpose of such a sales-use tax scheme is to make all tangible property used or consumed in the State subject to a uniform tax burden irrespective of whether it is acquired within the State, making it subject to the sales tax, or from without the State, making it subject to a use tax at the same rate. The appellant admits the validity of such a scheme. It contends, however, that in this case Louisiana has departed from the norm of tax equality and imposes on the appellant a greater tax burden solely because the property it uses in Louisiana is brought from out-of-state. The difference in tax burden is admitted by the appellee.

The facts were stipulated by the parties. The appellant is engaged in the business of servicing oil wells in a number of oil producing States, including Louisiana. Its business requires the use of specialized equipment including oil well cementing trucks and electrical well logging trucks. These trucks and their equipment are not generally available on the retail market, but are manufactured by the appellant at its principal place of business in Duncan, Oklahoma. The raw materials and semifinished and finished articles necessary for the manufacture of these units are acquired on the open market by the appellant and assembled by its employees. The completed units are tested at Duncan and then assigned to specific field camps maintained by the appellant. The assignment is permanent unless better use of the unit can be

---

[2] Emphasis added.

made at another camp. None of these units is manufactured or held for sale to third parties.

Between January 1, 1952, and May 31, 1955, the appellant shipped new and used units of its specialized equipment to field camps in Louisiana. In its Louisiana tax returns filed for these years, the appellant calculated and paid use taxes upon the value of the raw materials and semifinished and finished articles used in manufacturing the units. The appellant did not include in its calculations the value of labor and shop overhead attributable to assembling the units. It is admitted that this cost factor would not have been taxed had the appellant assembled its units in Louisiana rather than in Oklahoma. The stipulation of facts stated:

> "If Halliburton had purchased its materials, operated its shops, and incurred its Labor and Shop Overhead expenses at a location within the State of Louisiana, there would have been a sales tax due to the State of Louisiana upon the cost of materials purchased in Louisiana and a Use Tax on materials purchased outside of Louisiana; but there would have been no Louisiana sales tax or use tax due upon the Labor and Shop Overhead."

Nevertheless, in September 1955, the Louisiana Collector of Revenue, the appellee, assessed a deficiency of $36,238.43 in taxes, including interest, on the labor and shop overhead cost of assembling the units. The Collector held that this was required by the language of the use tax section of the statute which levies the 2% use tax on the "cost price" of the item, "cost price" being defined in an earlier section as the actual cost without deductions on account of "labor or service cost, . . . or any other expenses whatsoever." La. Rev. Stat. Ann. § 47:301 (3).

Also during this period, the appellant purchased 14 oil well cementing service units from the Spartan Tool and

68

Service Company of Houston, Texas. Spartan was not regularly engaged in the sale of such equipment and made the sale after deciding to liquidate its oil well servicing business. The appellant transferred these units to Louisiana. On one other occasion, the appellant purchased an airplane from the Western Newspaper Union of New York, a company not regularly engaged in the business of selling airplanes. The appellant acquired the plane for use in Louisiana. No Louisiana use tax was declared or paid subsequent to the transfer of these items to Louisiana. It is admitted in the stipulation of facts that had these acquisitions been made within Louisiana, they would have not been taxed. This is occasioned by the fact that the sales tax section of the statute applies only to sales made at retail and not to isolated sales by those not regularly engaged in the business of selling the item involved. Nevertheless, the Collector assessed a deficiency of $4,404.22 on the value of these items since the use tax on goods imported from out-of-state contains no equivalent distinction between isolated and retail sales.

The appellant paid the deficiency under protest and brought an action in the Louisiana District Court for the Nineteenth District for a refund pursuant to La. Rev. Stat. Ann. § 47:1576, alleging that this unequal tax burden is a discrimination against interstate commerce. The District Court found the assessment discriminatory. On appeal, the Louisiana Supreme Court reversed, holding that since no unreasonable distinctions or classifications had been drawn in the Louisiana sales and use tax statute, the incidental discrepancy in tax burden did not amount to a discrimination against interstate commerce. 241 La. 67, 127 So. 2d 502. On appeal to this Court, we noted probable jurisdiction. 368 U. S. 809. The case was first argued during the October Term 1961. We subsequently ordered it reargued. 369 U. S. 835.

## I.

This is another in a long line of cases attacking state taxation as unduly burdening interstate commerce. As this Court stated in *Best & Co. v. Maxwell,* 311 U. S. 454, 455–456: "In each case it is our duty to determine whether the statute under attack, whatever its name may be, will in its practical operation work discrimination against interstate commerce." This concern with the actuality of operation, a dominant theme running through all state taxation cases, extends to every aspect of the tax operations. Thus, in *Nippert v. Richmond,* 327 U. S. 416, the City of Richmond placed a fixed fee and earnings tax on itinerant solicitors of sales within the city. On its face, the ordinance applied to in-state as well as out-of-state distributors doing business by means of itinerant solicitors. The Court noted, however, the very fact that a distributor is out-of-state makes his use of, and dependence on, solicitors more likely. Thus, "the very difference between interstate and local trade, taken in conjunction with the inherent character of the tax, makes equality of application as between those two classes of commerce, generally speaking, impossible." *Id.,* at 432. The Court concluded that the tax was "discriminatory in favor of the local merchant as against the out-of-state one." *Id.,* at 431. Considered in isolation, the Louisiana use tax is discriminatory; it was intended to apply primarily to goods acquired out-of-state and used in Louisiana.[3] If it stood alone, it would be invalid. However, a proper analysis must take "the whole scheme of taxation into account." *Galveston, H. & S. A. R. Co. v. Texas,* 210 U. S. 217, 227; *Gregg Dyeing Co. v. Query,* 286 U. S. 472, 479–

---

[3] In fact, it was just such isolated consideration that led the trial court in *Silas Mason Co. v. Henneford,* 15 F. Supp. 958, 962, rev'd, 300 U. S. 577, to strike down the State of Washington use tax.

480. Thus, in *Best & Co.* v. *Maxwell, supra,* the Court compared the solicitation tax with the equivalent tax on local retail merchants before finding it discriminatory. 311 U. S., at 456. See *Memphis Steam Laundry Cleaner, Inc.,* v. *Stone,* 342 U. S. 389, 394–395; cf. *Phillips Chemical Co.* v. *Dumas School District,* 361 U. S. 376.

When *Henneford* v. *Silas Mason Co.,* 300 U. S. 577, reached this Court on appeal, the Court considered the Washington use tax in the context of the tax scheme of which it was a part, as a "compensating tax" intended to complement the state sales tax. So considered, the Court concluded: "Equality is the theme that runs through all the sections of the statute. . . . No one who uses property in Washington after buying it at retail is to be exempt from a tax upon the privilege of enjoyment except to the extent that he has paid a use or sales tax somewhere." The use tax is "upon one activity or incident," and the sales tax is "upon another, but the sum is the same when the reckoning is closed." The burden on the out-of-state acquisition "is balanced by an equal burden where the sale is strictly local." 300 U. S., at 583–584.

The conclusion is inescapable: equal treatment for in-state and out-of-state taxpayers similarly situated is the condition precedent for a valid use tax on goods imported from out-of-state.

The inequality of the Louisiana tax burden between in-state and out-of-state manufacturer-users is admitted. Although the rate is the same, the appellant's tax base is increased through the inclusion of its product's labor and shop overhead. The Louisiana Supreme Court characterized this discrepancy as incidental. However, equality for the purposes of competition and the flow of commerce is measured in dollars and cents, not legal abstractions.[4]

---

[4] Thus in *Memphis Steam Laundry Cleaner, Inc.,* v. *Stone, supra,* and *Best & Co.* v. *Maxwell, supra,* the Court compared the actual tax bills of the local and out-of-state taxpayers. In the former, the Court

In this case the "incidental discrepancy"—the labor and shop overhead for the units in dispute—amounts to $1,547,109.70. The use tax rate in Louisiana is 2% and has risen in some States to 4%.[5] The resulting tax inequality is clearly substantial.

But even accepting this, the Louisiana Supreme Court concluded that the comparison between in-state and out-of-state manufacturer-users is not the proper way to frame the issue of equality. It stated: "The proper comparison would be between the use tax on the assembled equipment and a sales tax on the same equipment if it were sold." On the basis of such a comparison, the out-of-state manufacturer-user is on the same tax footing with respect to the item used as the retailer of a similar item, or the competitor who buys from the retailer rather than manufacture his own. However, such a comparison excludes from consideration, without any explanation, the very in-state taxpayer who is most similarly situated to the appellant, the local manufacturer-user. If the Louisiana Legislature were in fact concerned over any tax break the manufacturer-user obtains, it would surely have made special arrangements to take care of the in-state as well as out-of-state loophole—unless, of course, it intended to discriminate. We can only conclude, therefore, that the proper comparison on the basis of this record is between in-state and out-of-state manufacturer-users. And if this comparison discloses discriminatory effects, it could be ignored only after a showing of adequate justification.

---

found discriminatory a $50 license tax on each truck used by an out-of-state laundry business soliciting and picking up laundry in Mississippi because resident laundries were required to pay only $8 per truck. In the latter, the Court found determinative a similar discrepancy between the $1 tax paid by local merchants and the $250 tax paid by the itinerant solicitor.

[5] Michigan, Pennsylvania, and Washington each has 4% sales and use taxes. 2-P–H 1963 Fed. Tax Serv. ¶ 13,299.

While the inequality in question may have been an accident of statutory drafting, it does in fact strike at a significant segment of economic activity and carries economic effects of a type proscribed by many previous cases. The appellant manufactures equipment specially adapted to its oil servicing business. The equipment is expensive; because of its limited and custom production, the labor and shop overhead is necessarily a significant cost factor. Activity of this character is often on the forefront of economic development where equipment and methods have yet to reach the standardization and acceptance necessary for mass production. If Louisiana were the only State to impose an additional tax burden for such out-of-state operations, the disparate treatment would be an incentive to locate within Louisiana; it would tend "to neutralize advantages belonging to the place of origin." *Baldwin* v. *Seelig, Inc.*, 294 U. S. 511, 527. Disapproval of such a result is implicit in all cases dealing with tax discrimination, since a tax which is "discriminatory in favor of the local merchant," *Nippert* v. *Richmond, supra*, also encourages an out-of-state operator to become a resident in order to compete on equal terms.[6] If similar unequal tax structures were adopted in other States, a not unlikely result of affirming here, the effects would be more widespread. The economic advantages of a single assembly plant for the appellant's multistate activities would be decreased for units sent to every State other than the State of residence. At best, this would encourage the appellant to locate his assembly operations in the State of largest use for the units. At worst, it would encourage their actual fractionalization or discontinuance. Clearly, approval of the Louisiana use tax in this case would "invite a multiplication of preferential trade areas destructive

---

[6] See cases collected in *Memphis Steam Laundry Cleaner, Inc.*, v. *Stone, supra*, p. 392, n. 7.

of the very purpose of the Commerce Clause." *Dean Milk Co. v. Madison,* 340 U. S. 349; 356.[7]

In light of these considerations we see no reason to depart from the strict rule of equality adopted in *Silas Mason,* and we conclude that the Louisiana use tax as applied to the appellant's specialized equipment discriminates against interstate commerce.

A similar disposition of the tax on the isolated sales follows as a matter of course. The disparate treatment is baldly admitted by the Louisiana Supreme Court: "The exemption of an isolated sale from the provisions of the sales tax applies strictly to sales within the State of Louisiana; it has no effect whatsoever on any transaction without the state." The out-of-state isolated sale, it concludes, must therefore be treated "as if" it were a sale at retail. As the facts of this case indicate, isolated sales involve primarily the acquisition of second-hand equipment from previous users. The effect of the tax is to favor local users who wish to dispose of equipment over

---

[7] In *Dean Milk Co.,* the City of Madison passed an ordinance requiring milk pasteurization plants to locate within a five mile radius of Madison to ease the problem of local health inspection. The Court held that where there were adequate alternative methods for insuring health standards, the locational requirement was a burden on interstate commerce. The dissent saw no problem in this restriction:

"As a practical matter, so far as the record shows, Dean can easily comply with the ordinance whenever it wants to. Therefore, Dean's personal preference to pasteurize in Illinois, not the ordinance, keeps Dean's milk out of Madison." 340 U. S., at 357.

However, this "personal preference" is the essence of a national unrestricted market. If, before striking down a burden on interstate commerce, this Court had to look to the record for economic justifications for Dean's location in Illinois, for the appellant's location in Oklahoma, for single rather than multipasteurization or assembly operations, the free flow of commerce would disappear before our very eyes. Justification for the system is presumed in the Commerce Clause itself.

out-of-state users similarly situated.. Whatever the Louisiana Legislature's reasons for granting such an exemption to this segment of the local second-hand market,[8] no attempt has been made to justify it or to show how its purpose would be defeated by extending the same exemption to similar out-of-state transactions.[9] We therefore conclude that the use tax on isolated sales in this case departs from the equality required by *Silas Mason* and discriminates against interstate commerce.

Thirty-five States other than Louisiana have sales and use tax statutes. At this juncture, Louisiana, according to the parties, is the only State to adopt the constructions presented for decision in this case. Those few States

---

[8] The appellee argues that the reason for the exemption is that any item sold in a local isolated sale has already been subjected to either a sales tax if it was originally acquired in Louisiana or a use tax if it was imported, whereas there is no assurance that an item acquired in an out-of-state isolated sale has ever sustained such a tax burden. The appellee further maintains that the taxes here in question could have been reduced by any such previous taxation. If the record supported the appellee's position, it would be carefully considered. However, the appellee has shown us no regulations providing for the deduction of sales or use taxes paid on the item prior to the out-of-state isolated sale; the appellee stated in the stipulation of facts that all evidence showing an isolated sale was irrelevant; and the above-quoted statement of the Louisiana Supreme Court leaves little room for such modification.

[9] Although no evidence was presented on the issue, one reason for not taxing local isolated sales and the labor and shop overhead of the local manufacturer-user may be the difficult administrative burden in either calculating or enforcing the tax. However, such a local administrative problem would not justify a different treatment of the similar out-of-state transaction, since the mere extension of the special treatment to the out-of-state transaction would satisfy both the local problem and the Commerce Clause. .

We fail to see a similar administrative problem in calculating the appellant's labor and shop overhead, since the tax base under either approach is calculated on the basis of the cost factors recorded in the appellant's books.

which have considered these issues at all appear to have rejected the Louisiana position for reasons in accord with our opinion here. Both Ohio and North Dakota have by administrative regulations excluded labor and shop overhead from the tax base of the out-of-state manufacturer-user on the ground that its inclusion might violate the Commerce Clause.[10] In *Chicago Bridge & Iron Co.* v. *Johnson*, 19 Cal. 2d 162, 119 P. 2d 945, the California Supreme Court upheld the application of its use tax to an out-of-state manufacturer-user, expressly pointing out that because labor and shop overhead had been excluded from its tax base, the taxpayer was in no different position from its in-state competitor. The parties have been able to find only one state case passing directly on either question. In *State* v. *Bay Towing & Dredging Co., Inc.*, 265 Ala. 282, 90 So. 2d 743, the Alabama Supreme Court held that the in-state exemption for isolated sales had to be extended to out-of-state isolated sales to avoid discrimination against interstate commerce.

The judgment of the Supreme Court of Louisiana is reversed and the case remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE BRENNAN, concurring.

I fully concur in the opinion of the Court insofar as it treats of isolated sales. It seems clear that Louisiana exempts from sales taxation within the State the pur-

---

[10] CCH Ohio State Rep., Cir. No. 18, Mar. 1, 1954, ¶ 60371.70; North Dakota Tax Commission, Rules Nos. 55 and 113.

Moreover, as this Court noted in *Henneford* v. *Silas Mason Co.*, 300 U. S. 577, 581, the State of Washington, recognizing the latent inequality, made special arrangements for the manufacturer-user: "The tax presupposes everywhere a retail purchase by the user before the time of use. If he has manufactured the chattel for himself, . . . he is exempt from the use tax, whether title was acquired in Washington or elsewhere."

chase of items which, if bought outside the State and brought in, would eventually incur a Louisiana use tax. The equality of treatment which my Brother CLARK finds assured by the credit for taxes already paid to other States seems to me wholly fortuitous. The credit for prior sales or use taxes will avert discrimination in the taxation of casual sales only if the out-of-state purchaser has already paid a sales or use tax equal to or greater than Louisiana's use tax, so that the credit is fully effective. If the purchaser abroad has paid no prior tax, or one of smaller amount, then upon his first use of the article in Louisiana he incurs a tax liability which he would clearly have escaped had he made the identical purchase at an exempted casual sale within the State. No justification for such discrimination has been suggested, and I can think of none beyond a mere possibility of administrative convenience.

I also agree that, under the circumstances of this case, the application of Louisiana's use tax statute to appellant is constitutionally impermissible. This result does not, I think, flow from any duty upon the States to ensure absolute equality of economic burden as between sales and use taxpayers. For we have sustained the constitutionality of the sales and compensating use tax system, *Henneford* v. *Silas Mason Co.*, 300 U. S. 577, even though as a matter of economic fact the out-of-state use taxpayer is likely ultimately to incur a heavier burden than his in-state counterpart, the sales taxpayer. Such a disparity may result, though the rate of taxation upon the two is identical, because the in-state seller is somewhat likelier to absorb some part of the sales-tax burden than is the out-of-state seller to absorb the burden of the use tax which his customer eventually must pay. Warren and Schlesinger, Sales and Use Taxes: Interstate Commerce Pays Its Way, 38 Col. L. Rev. 49, 70–74 (1938). And we have

also intimated, 300 U. S., at 587, that a State may not be constitutionally obliged to credit the amount of sales taxes paid in other States against the use tax it imposes. See Note, 51 Harv. L. Rev. 130, 132–133 (1937). Nevertheless, if the Constitution does not mandate absolute equality of treatment as between in-state and out-of-state sales, it assuredly does forbid discriminatory treatment by the States. Discrimination would result if different rates of taxation were imposed by the State on use and sale, and it is the result here because Louisiana, while it taxes the full value of property assembled without and used but not sold within the State, does not tax the full value of property assembled within the State and used but not sold there.

It does not follow, however, nor do I read the Court's opinion as so holding, that as a result of today's decision Louisiana has no option but to adopt the practice of Ohio, North Dakota, and California, see pp. 74–75, *supra,* and exclude labor and shop overhead from the tax base of the out-of-state manufacturer-user. That might be the case if the sole justification for the use tax were to offset the effect of sales taxes imposed on in-state purchasers, and thereby to deter domestic consumers from seeking to evade the sales tax by purchasing out of state. But we have recognized an alternative justification for the use tax as a levy upon "the privilege of use after commerce is at an end." 300 U. S., at 582; see Hartman, State Taxation of Interstate Commerce (1953), 162–163. Thus Louisiana surely may if it chooses tax appellant's trucks and equipment, when they come to rest in the State, at their full value. Since this alternative is available to Louisiana and any other use-tax State, I fail to see the inevitability of my Brother CLARK's prediction that "this decision will deprive Louisiana of millions of dollars under its sales tax." The Court holds no more than that if Louisiana

chooses to levy such a use tax it cannot constitutionally exempt in-state manufacturer-users as it now does; it must tax "the privilege of use" within the State of the property of such users at full value and at the same rates. Nothing in the Court's opinion nor in my view of the case prescribes the particular manner in which Louisiana must obey the Constitution.

MR. JUSTICE CLARK, with whom MR. JUSTICE BLACK joins, dissenting.

The Court strikes down Louisiana's use tax on the ground that it discriminates against out-of-state assemblers who move their products into the State for use therein. In so doing the Court permits the out-of-state assembler to move his finished product into the State at a tax lower than that exacted upon Louisiana's residents who purchase the identical product within the State. The damage that this decision will do to the tax structure of a State is clearly revealed by the *amici curiae* briefs filed here. Thomas Jordan, Inc., rents barges to others in Louisiana. They are built by shipyards outside of Louisiana. Jordan claims that when it brings a barge to Louisiana it can only be taxed on the items that went into the barge, not the finished product. Chicago Bridge and Iron Company fabricates steel plates outside of Louisiana and ships them into Louisiana. It claims that its tax should be on the components of the plates. Sperry Rand Corporation, through its subsidiary Remington Rand, manufactures office furniture which it brings into Louisiana and rents to customers. It claims its tax is on the wood, metal, lacquers, etc., going into the furniture. Humble Oil and Refining Co. has Chicago Bridge and Iron Co. fabricate, outside of Louisiana, certain field erected structures for Humble's oil refinery at

Baton Rouge and it claims the tax should be on the components of these completed structures. American Can Co. manufactures can manufacturing machinery outside of Louisiana which it ships into Louisiana for its use and it claims the tax should be only on the components of the machines. And, finally, Rosson-Richards Processing Co. wire wraps and coats iron pipe which it transports to Louisiana where the pipe is laid into oil and gas pipelines. It claims the tax is due only on the components of the finished pipe.

These claims are predicated on the proposition that the finished product assembled outside Louisiana pays more tax upon entering Louisiana for use than a like finished product pays when assembled from parts within that State and used by the assembler thereof. But the tax is on the privilege of use after commerce is at an end and the test is whether all persons similarly situated are treated alike. *Royster Guano Co.* v. *Virginia,* 253 U. S. 412, 415 (1920). And so it cannot be said that equal protection is denied by a statute which operates alike on all *persons* and *property similarly situated.* The fallacy of the Court's holding is that it ignores the incidence of the tax in Louisiana's Tax Act. That incidence is the moment that the product becomes a part of the mass of property within the State. It matters not what happens to the property subsequently. The tax attaches to the property in its form at that specific time. This is true in both the sales and the use tax here. It follows that if the barge, steel plates, office furniture, field erected structures, can manufacturing machinery, wire wrapped pipes and oil well servicing trucks are sold in Louisiana the 2% sales tax is exacted on the completed articles just as it is when they are moved into the State without sale and the use tax of 2% is levied. All persons and like property similarly situated are thus given identical treatment.

Likewise if Halliburton brought in nuts and bolts and put them together within Louisiana into a truck it would pay the identical tax a resident paid in a similar transaction. Again, if a Louisiana resident bought a completed truck outside his State and brought it into the State as did Halliburton, he would pay the same tax on the property. The result of Louisiana's law is similar to that described in *Henneford* v. *Silas Mason Co.*, 300 U. S. 577, 584 (1937):

> "When the account is made up, the stranger from afar is subject to no greater burdens as a consequence of ownership than the dweller within the gates. The one pays upon one activity or incident, and the other upon another, but the sum is the same when the reckoning is closed. Equality exists when the chattel subjected to the use tax is bought in another state and then carried into Washington. It exists when the imported chattel is shipped from the state of origin under an order received directly from the state of destination. In each situation the burden borne by the owner is balanced by an equal burden where the sale is strictly local."

The Court, however, would look beyond the taxable event. It would require the State to trace the nuts and bolts, etc., sold to the resident and tax their ultimate form—a truck—if it wished to tax Halliburton. This, of course, is an impossible burden and from a practical standpoint would not be enforceable. In addition, the Court changes the incidence of the tax as well as the property taxed. Nuts and bolts are not trucks. The incidence of the tax on the former was when they were nuts and bolts and not when they became a truck. They became a part of the mass of property of the State on their sale as nuts and bolts, not trucks.

I believe that this decision will deprive Louisiana of millions of dollars under its sales tax.[1] Every sizable business concern not having Louisiana facilities to manufacture its own requirements will buy raw materials out of state and have them fabricated outside Louisiana— just as do Halliburton, Jordan, Humble, Chicago Bridge and the other *amici*—and then bring the finished product into Louisiana for use. Instead of paying a tax on the greater value of the finished product brought into and used in the State they will, under the Court's interpretation, pay only the lesser value of the various components that went into the finished product.

As for the isolated sales, the Act specifically provides for a credit on Louisiana use taxes of any like tax equal to or greater than the Louisiana tax which has been paid in another State. La. Rev. Stat. Ann. § 47:305. Property within Louisiana has already been subjected to a sales tax and subsequent sales are exempted. The credit allowed on the use tax for taxes paid in another State on isolated sales of property brought into Louisiana effects the same identical result. As the Supreme Court of Louisiana noted the "property involved herein has not borne a similar tax in another state," 241 La., at 92, 127 So. 2d, at 511, and the taxing authorities have unequivocally represented to this Court that such taxes would be allowed

---

[1] For a like appraisal see *Henneford* v. *Silas Mason Co., supra,* at 581: "The plan embodied in these provisions is neither hidden nor uncertain. . . . The practical effect . . . is readily perceived. One of its effects must be that retail sellers in Washington will be helped to compete upon terms of equality with retail dealers in other states who are exempt from a sales tax or any corresponding burden. Another effect, or at least another tendency, must be to avoid the likelihood of a drain upon the revenues of the state, buyers being no longer tempted to place their orders in other states in the effort to escape payment of the tax on local sales."

as credits if claimed and proven. I would take the promise of the State's authorities at its face value.[2]

For these, as well as the reasons given in the opinion of the Supreme Court of Louisiana, I would affirm.

---

[2] My Brother BRENNAN finds that the tax credit allowed by La. Rev. Stat. Ann. § 47:305 will not avoid inequality of treatment in all situations. I find no cases from Louisiana interpreting this section of the Act, but the appellee tax collector states in his brief that a tax credit is given "for all similar taxes paid to another state" in order "to insure perfect equality of the tax burden. . . ." In view of the Louisiana Supreme Court's demonstrated practice of construing the provisions of the use tax so as to avoid unreasonable and discriminatory applications, *Fontenot* v. *S. E. W. Oil Corp.*, 232 La. 1011, 95 So. 2d 638 (1957), I cannot agree with my Brother BRENNAN's anticipation that unequal treatment will result in future applications of the Act. Cf. *Monamotor Oil Co.* v. *Johnson*, 292 U. S. 86, 95–96 (1934).