303 So.2d 750 (1974)
CHICAGO BRIDGE & IRON CO.
v.
Roland COCREHAM, Collector of Revenue.
No. 9975.
Court of Appeal of Louisiana, First Circuit.
November 12, 1974.
Rehearing Denied December 16, 1974.
Writ Granted February 14, 1975.
*751 John D. Wogan, New Orleans, John W. Werner, Oak Brook, Ill., for appellant.
James A. Norris, Jr., West Monroe, for appellee.
Before LOTTINGER, COVINGTON and BAILES, JJ.
COVINGTON, Judge.
Chicago Bridge & Iron Company, the taxpayer herein, filed this suit against the Collector of Revenue for the State of Louisiana, seeking a refund of certain use taxes paid under protest. The Collector filed a reconventional demand for additional use taxes, and also made a subsequent claim for attorney's fees; to which actions the taxpayer filed exceptions of prescription and no cause of action.
During the taxable period the taxpayer, an Illinois corporation authorized to do and doing business in the State of Louisiana, was engaged in the business of constructing specialized steel plate structures, such as storage tanks, generally for municipalities and corporations. The structures built by the taxpayer consisted primarily of fabricated steel plates assembled by the taxpayer's employees on prepared foundations at the job site. Unfinished steel plates were purchased by the taxpayer from out-of-state suppliers, and carried to the taxpayer's out-of-state shops where the steel plates were fabricated with labor and overhead expenses paid by the taxpayer. After fabrication the steel plates were usually transported at the taxpayer's expense from its out-of-state shops by common carrier to Louisiana job sites.
Basically this suit involves the application and validity of the Louisiana use tax to the activities of Chicago Bridge & Iron Company, the taxpayer, during the taxable period. On December 6, 1972, the suit was tried, with most of the facts stipulated. In general, the testimony of the witnesses concerned the policy and practice of the Department of Revenue with regard to the assessment and collection of the use tax during the taxable period.
After considering the evidence and the briefs of counsel, the trial court, having assigned written reasons, rendered judgment dismissing the taxpayer's claim for a refund and its exception of prescription, and granting the Collector the additional use tax claimed. The judgment also rejected the Collector's claim for attorney's fees. Motions for new trial by both parties were denied. Then both parties appealed the judgment.
The taxpayer concedes that a use tax based on the purchase price paid for the unfinished steel plates to the out-of-state sellers was owed to the State of Louisiana; and it having been paid, there is no dispute on this item. There is also no dispute as to the amount of the use tax due, the amount having been stipulated at the trial, if the Court decides that the taxpayer owes additional use taxes.
The taxpayer complains that the Collector employed an incorrect tax base in that he included the element of labor and shop overhead expenses for fabricating the steel plates in the taxpayer's out-of-state shops and the element of transportation expenses paid by the taxpayer to transport the fabricated steel plates from its out-of-state shops to Louisiana job sites. Specifically the taxpayer contends that the Louisiana sales-use tax laws do not impose a use tax on labor and shop overhead expenses and transportation expenses. Of course, the Collector asserts that he employed the correct tax base.
*752 The trial court found, with which finding we agree, that by a preponderance of the evidence the following pertinent facts were established: Chicago Bridge & Iron Company purchased its raw materials, operated its fabricating shops, incurred its labor and overhead expenses at out-of-state locations; and further the taxpayer incurred transportation expenses in shipping its fabricated materials by common carrier from its out-of-state locations to Louisiana job sites. No sales or use tax was paid by the taxpayer on any of these activities.
In addition to the tax upon the cost of the raw materials (which tax is not disputed), the Collector seeks to collect a use tax based upon the labor and shop overhead expenses and the transportation expenses.
The facts further establish that if the taxpayer had purchased its materials, operated its fabricating shops, and incurred its labor and overhead expenses at in-state locations, there would have been due to the State of Louisiana a sales tax upon the cost of the materials purchased in this State and a use tax on materials purchased out-of-state. There would also have been a Louisiana sales tax or use tax due to the State of Louisiana upon the labor and shop overhead expenses and the transportation expenses.
Concerning these established pertinent facts there are two basic questions to be answered:
First, what is the proper tax base for the Collector to employ in collecting the Louisiana use tax?, and
Secondly, is the Louisiana use tax constitutional?
The first question concerning the proper tax base for the use tax has largely been answered by this Court in the recent case of Mouton v. Klatex, Inc., La.App., 238 So.2d 1 (1st Cir. 1970), writ refused 256 La. 873, 239 So.2d 365, and application denied by United States Supreme Court, 401 U.S. 968, 91 S.Ct. 1192, 28 L.Ed.2d 318.
In Klatex, the Collector sued to recover use taxes from Klatex, Inc., using as the tax base the purchase price and the transportation expenses. Klatex, Inc. purchased goods in Arkansas for use in Louisiana and purchased separate from the purchase price of the goods transportation from common carriers, which then delivered the goods to Louisiana destinations. The trial court ruled that such transportation expenses were not includable in the "cost price" of the goods, with the result that no additional use tax was due the State. The Court of Appeal reversed the judgment of the trial court, holding that such transportation expenses are included in the "cost price" or tax basis for imposition of the use tax.
In its opinion in the Klatex case, the Court said:
"We feel the legislative intent is clear and that transportation charges and any other expenses `whatsoever' are not to be deducted from cost price in figuring the tax basis for imposition of the use tax."
The reasoning of the Court in the Klatex case in determining that transportation expenses are properly includable as an element of the tax base is equally applicable to the question of whether labor and shop overhead expenses are includable as an element of the tax base of the use tax.
La.R.S. 47:302 is the basic statute imposing the sales-use tax in Louisiana. This statute provides in part:
"There is hereby levied a tax upon the sale at retail, the use, the consumption, the distribution, and the storage for use or consumption in this state, of each item or article of tangible personal property, as defined herein, the levy of said tax to be as follows: ...
"(2) At the rate of two per centum (2%) of the cost price of each item or article of tangible personal property when the same is not sold but is used, consumed, distributed, or stored for use or consumption in this state; provided there shall be no duplication of the tax."
Where the tax liability exists because there is use or consumption of tangible *753 property in Louisiana, the measure of the use tax liability is two per centum of the "cost price" of each item or article of tangible personal property. La.R.S. 47:302, subd. A(2).
"Cost price" is defined in La.R.S. 47:301(3) as follows:
"`Cost price' means the actual cost of the articles of tangible personal property without any deductions therefrom on account of the cost of materials used, labor or service cost, transportation charges or any other expenses whatsoever..."
There is no language in the statutory definition of "cost price" to suggest that the term is restricted to "purchase price of raw materials only." The term explicitly means "actual cost" of the articles of tangible personal property and is made even more definite by the express statement that "cost of materials used, labor or service cost, transportation charges or any other expenses whatsoever" are not to be deducted in arriving at the "cost price" of the property.
Moreover, La.R.S. 47:303, subd. A states that the use tax is paid on all articles of tangible personal property imported and used, "the same as if the said articles had been sold at retail for use or consumption in this state." This statute was correctly interpreted by the Court in Fontenot v. S. E. W. Oil Corporation, 232 La. 1011, 95 So.2d 638 (1957), as follows:
"These provisions, along with the others above mentioned, clearly indicate that the `use' tax is to be computed on the retail price the property would have brought when importedthat is, its then value or worth."
In addition to the above citations and the language used in defining "cost price," we consider the following applicable portion of La.R.S. 47:305(5):
". . . It is, however, the intention of this Chapter to levy a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this state, of tangible personal property after it has come to rest in this state and has become a part of the mass of property in this state."
As pointed out by the Court in Mouton v. Klatex, Inc., supra, in discussing this section:
"The taxable moment or time when the use tax may properly be imposed is when the property has been withdrawn from interstate commerce and has become part of the mass of the property of the taxing state."
This determination of the incidence of tax is supported by the dissenting opinion of Justice Clark, joined by Justice Black, in the Halliburton case, 373 U.S. 64, 83 S. Ct. 1201, 10 L.Ed.2d 202 (1963), infra, as follows:
". . . the incidence of the tax in Louisiana's Tax Act ... is the moment that the product becomes a part of the mass of property within the State. It matters not what happens to the property subsequently. The tax attaches to the property in its form at that specific time."
Consequently, we agree with the trial court that, according to Louisiana's Tax Act, particularly La.R.S. 47:301(3), costs of raw materials, labor and shop overhead expenses, transportation expenses, and all other related expenses are "all includable elements of added value which when aggregated comprise the taxable base of the use tax."
The second question to be answered is whether the Louisiana use tax is constitutional. The taxpayer argues on this question that a use tax encompassing the elements of labor and shop overhead and transportation expenses is unenforceable, because it violates the rights of the taxpayer under the constitutions of Louisiana and the United States. Specifically the taxpayer urges that the use tax claimed by the Collector in this suit is illegally discriminatory, *754 thereby violating the protections guaranteed in Article I, Section 8, Clause 3 (the commerce clause) of the United States Constitution and in Article 10, Section 1 and Article 1, Section 2 of the Louisiana Constitution of 1921.
The main thrust of the taxpayer's attack is aimed at the alleged discriminatory effect of the state's use tax, which was held to be unconstitutional in its application by the United States Supreme Court in the case of Halliburton Oil Well Cementing Co. v. Reily, 373 U.S. 64, 83 S.Ct. 1201, 10 L.Ed.2d 202 (1963), rehearing den. 374 U. S. 858, 83 S.Ct. 1861, 10 L.Ed.2d 1082 (1963).
We must say at the outset that we do not feel constrained to follow the Halliburton decision. The stipulation of facts on which that decision rested are as follows:
"If Halliburton had purchased its materials, operated its shops, and incurred its Labor and Shop Overhead expenses at a location within the State of Louisiana, there would have been a sales tax due to the State of Louisiana upon the cost of materials purchased in Louisiana and a Use Tax on materials purchased outside of Louisiana; but there would have been no Louisiana sales tax or use tax due upon the Labor and Shop Overhead."
At the trial of the instant case, the foregoing Halliburton stipulation was convincingly shown to be erroneous. All of the witnesses testifying on behalf of the Collector concerning the Halliburton stipulation and the policy of the Department of Revenue lead only to the conclusion that the Halliburton stipulation does not correctly state the Department's policy or its actual application of Louisiana's use tax laws. The only evidence that might be construed to be contradictory on this point was the testimony of one witness for the taxpayer offered on rebuttal.
In the instant case, the trial court found by a clear preponderance of the evidence that the Louisiana use tax is imposed on the elements of labor and shop overhead and transportation expenses. The evidence demonstrates that if the same activity here sought to be taxed by the Collector had occurred entirely within the State of Louisiana, there would have been a sales tax on the expenses to the taxpayer of labor and shop overhead of fabricating the steel plates, and also a sales tax on the expenses of transporting the fabricated steel plates from an in-state fabricating shop to a Louisiana job site. The tax has always been non-discriminatory in its operation, according to the uncontroverted evidence in the instant case.
In the case of Henneford v. Silas Mason Co., 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814 (1937), Justice Cardozo declared that a use tax is not discriminatory where "the stranger from afar is subject to no greater burdens as a consequence of ownership than the dweller within the gates." As approved in Silas Mason, the purpose of such a sales-use tax system is to make all tangible personal property used or consumed in the state subject to a uniform tax burden regardless of whether the property is acquired within the state, making it subject to the sales tax, or from without the state, making it subject to a use tax at the same rate. "Equality is the theme," in Silas Mason; the use tax is "upon one activity" and the sales tax is "upon another activity," but "the sum is the same when the reckoning is closed."
The established facts herein bring the instant case comfortably within the "equality" rule of Silas Mason, supra.
"The conclusion is inescapable," in the language of the Halliburton case, supra, "equal treatment for in-state and out-of-state taxpayers similarly situated is the condition precedent for a valid use tax on goods imported from out-of-state."
We hold, as did the trial court, that the Louisiana Sales-Use Tax is constitutional, and that this state's sales-use tax system operates uniformly to both interstate and intrastate transactions, in no way *755 favoring the intrastate taxpayer over the interstate taxpayer. See Mouton v. Klatex, Inc., supra.
We, therefore, answer the stated questions as follows:
First, the proper tax base for the Collector to employ in collecting the Louisiana use tax is the "cost price" of the tangible personal property, including labor and shop overhead expenses and transportation expenses.
Secondly, the Louisiana use tax is constitutional, because it is non-discriminatory and meets the test of "equality."
In addition, there are two incidental questions which require an answer:
First, has the Collector's claim for additional use taxes prescribed?, and
Second, is the Collector entitled to recover on his claim for attorney's fees?
On the question of prescription, the taxpayer argues that the Collector's claim for an additional use tax based on the taxpayer's labor and shop overhead expenses in fabricating the steel plates in the taxpayer's out-of-state shops is barred by the three-year prescription provided in Article 19, Section 19, of the Louisiana Constitution of 1921.
That Article provides, in pertinent part, as follows:
". . . that all taxes and licenses, other than real property taxes, shall prescribe in three years from the 31st day of December in the year in which such taxes or licenses are due."
The sole purpose of this constitutional provision is "to deter the practice of bringing suits on stale tax claims." See State v. Alden Mills, 202 La. 416, 12 So.2d 204 (1943), as cited in Collector v. Pioneer Bank and Trust Co., 250 La. 446, 196 So.2d 270, 273 (1967).
The Collector's claim in the instant case can not be classified as a "stale claim." The stipulated facts reveal that the Collector and the taxpayer entered into several certain agreements extending the prescriptive periods through March 31, 1964. Prior to the expiration of the latest of the suspended periods, the taxpayer filed this suit on March 20, 1964, for a refund of the taxes paid under protest. In this suit the Collector filed responsive pleadings, and then on August 8, 1967, filed a reconventional demand for additional use taxes.
In the case of Collector of Revenue v. J. L. Richardson Company, La.App., 247 So. 2d 151 (4th Cir. 1971), the Court pointed out:
"The primary purpose of prescriptive periods is to timely advise a person of his potential liability arising from an occurrence or transaction in which he was involved, as well as to put an end to his potential liability if no proceedings are filed within a reasonable period of time."
The taxpayer herein can not seriously consider that he was not timely advised of his potential liability. The several suspension agreements dealing with the question of the use tax liability of Chicago Bridge & Iron Company were for the mutual benefit of the taxpayer and the Collector, while they tried to resolve amicably a difficult tax question.
La.R.S. 47:1580 includes a provision for the suspension of prescription, as follows:
"... The running of such prescription may also be suspended by means of a written agreement between the taxpayer and the collector made prior to the lapse of the prescriptive period set out in the Constitution of Louisiana."
Hence, we can only conclude that the running of prescription in the instant case was suspended by the agreement, filed as Exhibit 22, extending the prescriptive period through March 31, 1964.
On March 20, 1964 (prior to the running of the prescriptive period) the taxpayer elected to file its petition for a *756 refund of the taxes paid under protest. By so filing this petition instituting this suit in the state district court, the taxpayer interrupted the running of prescription under the express provisions of La.R.S. 47:1580.
This Section states as follows:
"The prescription running against any state tax, license, excise, interest, penalty or other charge shall be interrupted by:
"(1) The collector's action in assessing any such amounts in the manner provided by law;
(2) The filing of a summary proceeding in court;
(3) The filing of any pleadings, either by the collector or by a taxpayer, with the board of appeals or any state or federal court; ..."
This Section specifically states that the filing of any pleadings either by the collector or the taxpayer serves to interrupt prescription. We find that the trial court was correct in holding that the filing of the refund suit by the taxpayer effectively interrupted the running of prescription as to the use tax during the taxable period herein. The case of Collector of Revenue v. Pioneer Bank and Trust Co., 250 La. 446, 196 So.2d 270 (1967), supports this position. In the Pioneer Bank case the Court overruled a plea of prescription where the three-year prescriptive period had been effectively interrupted by one of the applicable modes of interruption provided in Section 1580, i. e., assessment of tax deficiency. In the instant case the mode of interruption was the filing of a pleading by the taxpayer with a state court. The law makes no distinction among the several modes of interruption as to their legal effectiveness in interrupting the runing of prescription. Each mode of interruption accomplishes this purpose. Therefore, we agree with the trial court's overruling of the exception of prescription filed by the taxpayer in the instant suit.
Finally, we consider the question of whether the Collector is entitled to recover on his claim for attorney's fees. The trial court disallowed this claim for attorney's fees, considering that the applicable statute, La.R.S. 47:1512, classified such attorney's fees as a "penalty" which was not favored in the law. In justifying its denial of attorney's fees, the trial court relied upon the case of State v. Sinclair Refining Co., 195 La. 288, 196 So. 349 (1940), quoting in part, as follows:
"... while it is true the payments were not made within the time prescribed by law, yet they were made, and the State received the entire amount due, and, so far as the record discloses, made no complaint and made no demand for the payment of penalties until the filing of this suit. This claim for penalties is stale ... This court has repeatedly held that penalties in civil actions are not favored by the courts."
We are unable to agree with the trial court that the Sinclair case rejected the claim for attorney's fees. As shown by the case of Daspit v. Sinclair Refining Co., 198 La. 9, 3 So.2d 259 (1941), which is a follow-up to the Sinclair case, the judgment in the Sinclair case did provide for attorney's fees.
The applicable law on the question of attorney's fees in tax matters is found in La.R.S. 47:1512:
"The collector is authorized to employ private counsel to assist in the collection of any taxes, penalties or interest due under this Sub-title, or to represent him in any proceeding under this Sub-title. If any taxes, penalties or interest due under this title are referred to an attorney at law for collection, an additional charge for attorney fees, in the amount of ten per centum (10%) of the taxes, penalties and interest due, shall be paid by the tax debtor."
In the recent case of Collector of Revenue v. Gulf States Utilities Co., La.App., *757 289 So.2d 367 (1st Cir. 1974), this Court allowed attorney fees in a summary proceeding brought pursuant to La.R.S. 47:1574:
"The Collector is further entitled to recover attorney's fees in the amount of ten percent on the aggregate of principal unpaid taxes and interest due thereon, together with all costs of these proceedings."
Payment of a tax under protest in accordance to L.S.A.R.S. 47:1576, neither releases nor extinguishes an obligation in favor of the state resulting from the finality of the assessment it merely provides a procedure for judicial review of the legality of the assessment from its inception and also the legality of the enforcement measures resorted to by the tax collector.
It is not a payment in full without question of the tax by the tax debtor nor a collection by the tax collector without strings attached to it. As a matter of fact the amount paid must be segregated and held by the collector pending the outcome of the suit. If the debtor prevails, the collector must refund the amount to the claimant, with interest at the rate of 2% per annum covering the period from the date said funds were received by the collector to the date of the refund. R.S. 47:1576 and Ortlieb Press, Inc. v. Mouton, (La. 1st Cir. App. 1972), 268 So.2d 85, writ refused.
There is no question but that when the Collector of Revenue is met with a proceeding under R.S. 47:1576 or for the collection by suit of any other taxes, he is in dire need of private counsel and is authorized and empowered to employ private counsel to represent him in any proceeding to assist in the collection of any taxes, penalties or interest in accordance with R. S. 47:1512, quoted above.
The facts show that in the instant case the Collector employed private counsel to represent him to recover the additional taxes allegedly owed by the taxpayer, as well as to defend against the taxpayer's claim for a refund. Taxes and interest have been found to be due by the taxpayer in this suit. Consequently, the Collector is entitled to recover attorney's fees in the amount of ten per centum (10%) on the entire amount of the judgment, including principal and interest and the amount paid by the taxpayer under protest. See Mouton v. Klatex, Inc., La.App., 238 So.2d 1 (1st Cir. 1970); State v. Harrison Wholesale Liquors, La.App., 80 So.2d 546 (Orl. 1955); and State v. Menefee Motor Co., 18 La.App. 694, 139 So. 61 (Orl.1932).
For the foregoing reasons, the judgment appealed from is amended insofar as it denied recovery to the Collector of attorney fees, and judgment is entered herein in favor of the Collector and against the taxpayer for attorney fees pursuant to La.R.S. 47:1512. In all other respects, the judgment appealed from is affirmed, all costs to be paid by the taxpayer.
Judgment amended and affirmed.