917 So.2d 532 (2005)
LOUISIANA POWER AND LIGHT COMPANY
v.
Ralph SLAUGHTER, Secretary of State of Louisiana, Department of Revenue and Taxation
Louisiana Power and Light Company
v.
Ben Morrison, Secretary of State of Louisiana, Department of Revenue and Taxation.
No. 2004 CA 2361.
Court of Appeal of Louisiana, First Circuit.
November 4, 2005.
Rehearing Denied December 28, 2005.
*533 Robert S. Angelico, Cheryl M. Kornick, New Orleans, Counsel for Plaintiff/Appellant Entergy Louisiana, Inc.
Franklin J. Foil, Baton Rouge, Counsel for Defendant/Appellee Secretary, Louisiana Department of Revenue and Taxation.
Before: KUHN, GUIDRY, and PETTIGREW, JJ.
KUHN, J.
These consolidated appeals address whether plaintiff, Louisiana Power & Light Company (LP & L), is entitled to receive a refund of use taxes that it paid under protest to defendant, the Secretary of Louisiana's Department of Revenue and Taxation ("the Department"). Through a series of four transactions that took place outside the state of Louisiana, LP & L purchased raw uranium, converted it, enriched it, and further fabricated it into nuclear fuel rods. LP & L brought these *534 finished nuclear fuel rods into Louisiana for use within the state. The issue considered by this court is whether two transactions involved in LP & L's acquisitions of its nuclear fuel are subject to use tax, i.e., the chemical conversion of raw uranium into uranium hexafluoride (UF6) and the mechanical enrichment of the UF6 by gaseous diffusion.
In the proceedings below, the trial court granted the Department's motion for summary judgment, which prayed for the dismissal of LP & L's petitions, and denied a cross motion for summary judgment filed by Entergy Louisiana, Inc. ("Entergy").[1] Entergy, who was formerly LP & L, has filed the present appeal, contending the conversion and enrichment transactions should not be subject to Louisiana use tax because these transactions would not have been subject to Louisiana sales tax if they had occurred within Louisiana. The Department contends, however, that these transactions constitute "the fabrication of tangible personal property" and each transaction would be classified as a "sale" within the meaning of Louisiana Revised Statute 47:301(12), if it had occurred within Louisiana. Accordingly, the Department asserts the transactions are taxable and are subject to Louisiana's use tax. We consider that portion of the trial court's judgment that granted the Department's motion for summary judgment pursuant to our appellate jurisdiction; we consider that portion of the judgment that denied Entergy's motion for summary judgment pursuant to our supervisory jurisdiction. Based on our review, we affirm the trial court's judgment and deny Entergy's writ application.

I. FACTUAL AND PROCEDURAL BACKGROUND
According to its petition, LP & L, formerly an electric utility subsidiary of Entergy Corporation, owned and operated electric generating facilities in Louisiana, including the Waterford Steam Electric Generating Station Unit No. 3 (Waterford 3), located near Killona, Louisiana, in St. Charles Parish. Waterford 3 uses nuclear fuel to produce the heat necessary for the generation of electric energy. LP & L's agents or third parties purchased natural or raw uranium, which was later incorporated into Batch J and Batch K, the batches of fuel at issue in these consolidated appeals. Before these batches of fuel were imported into Louisiana, the uranium was converted, enriched, and further fabricated into nuclear fuel rods for use as boiler fuel at Waterford 3. When these batches were shipped into Louisiana, LP & L paid use taxes on the aggregate cost of the natural uranium, its conversion, its enrichment, and the cost of the final fabrication process. A portion of its payment was paid under protest pursuant to Louisiana Revised Statute 47:1576.[2]
*535 LP & L filed these suits to recover the amounts paid under protest, alleging it was contrary to Louisiana Sales Tax Law, Louisiana Revised Statutes 47:301 et seq., to include the conversion and enrichment transactions in the taxable base of Batches J and K. Alternatively, LP & L sought a decree that excluded the costs of the conversion and enrichment transactions from the taxable base of Batches J and K.[3]
In the consolidated proceedings below, the Department filed a motion for summary judgment, seeking the dismissal of LP & L's refund claims. Entergy also filed a cross motion for summary judgment, in which it sought a declaration that it did not owe Louisiana use tax on the transactions in question and that it was entitled to a full refund of all amounts paid under protest, with interest.
The parties entered into a joint stipulation of facts addressing LP & L/Entergy's fuel operations. Therein, the parties stated the following relevant facts:
3. The nuclear fuel used in [the plant] is the result of four separate processes consisting of (1) the purchase or raw uranium; (2) the conversion of the uranium; (3) the enrichment of the uranium; and (4) the fabrication of the nuclear fuel assemblies.
4. With respect to [the batches of nuclear fuel at issue in this litigation], the nuclear fuel was not brought into Louisiana until the completion of all four processes referenced [above].
5. With respect to [the batches of nuclear fuel at issue in this litigation], the raw uranium, a solid sometimes referred to as "yellow cake," was purchased from sources outside of Louisiana. Entergy and the Department agree that use tax is due on the purchase of the "yellow cake."
6. Conversion of the yellow cake is a chemical process which uses, among other things, elevated temperatures, to convert the "yellow cake" to a gas, [the UF6 ]. The conversion services relating to the batches of nuclear fuel at issue ... were performed by a third-party converter and took place outside of Louisiana. As part of the conversion services, the converter delivered the UF6 to an enricher, f.o.b. the enricher. The converter is a different entity from the enricher....
7. Enrichment of the UF6 is a mechanical process. Within the UF6, two isotopes exist, U235 and U238. The U235 isotopes exists approximately 7/10th of 1% in nature. In order for the nuclear fuel to work in the reactor, the percentage of the U235 isotope must be between approximately three and five percent. Enrichment is the process by which the percentage of the U235 in the UF6 is increased. Enrichment of the UF6 for the nuclear fuel at issue in [this litigation] took place by gaseous diffusion. In this mechanical process, the UF6 gas is blown into a cascade of double-walled chambers with porous inner walls. In each chamber, the lighter U235 isotope contained in the UF6 seeps out of the inner wall into the outer walled area at a greater rate, providing a slightly enriched gas, which moves forward in the cascade to continue the enrichment process until the desired product is obtained. The depleted *536 gas moves backward in the cascade and eventually becomes a waste product known as tails.
8. All enrichment with respect to the batches of nuclear fuel at issue in [this litigation] took place outside of Louisiana.
9. The fourth and final process is the fabrication of the nuclear fuel assemblies. In this process, the enriched UF6 is converted through a chemical process to a powder, UO2. This powder is then baked into ceramic pellets and the pellets are shaped and molded to the plant's desired specification. Then the pellets are loaded into fuel rods, and the fuel rods are joined together into fuel assemblies. The fabrication process for the batches of nuclear fuel at issue in [this] litigation took place outside of Louisiana.
10. For all batches of nuclear fuel at issue in this litigation, the nuclear fuel was brought into Louisiana for use in Waterford 3 after completion of the four separate processes described above.[4] (Footnote added.)
After considering the evidence presented, the trial court by judgment dated July 16, 2004, granted the Department's motion for summary judgment and denied LP & L's cross motion for summary judgment.[5] Entergy has appealed, urging that the trial court erred in ruling that the conversion and enrichment transactions are subject to Louisiana's use tax.
Initially, we note that the portion of the trial court's judgment that granted the Department's motion for summary judgment, which sought the dismissal of LP & L's claims, is appealable. Because the denial of a motion for summary judgment is an interlocutory judgment, however, the portion of the judgment denying Entergy's motion for summary judgment is not appealable. See La. C.C.P. art. 1841; Davis v. Specialty Diving, Inc., 98-0458, p. 5 (La.App. 1st Cir.4/1/99), 740 So.2d 666, 669, writ denied, 99-1852 (La.10/8/99), 750 So.2d 972. A court of appeal, however, has plenary power to exercise supervisory jurisdiction over trial courts and may do so at any time, according to the discretion of the court. See La. C.C.P. art. 2201; Charlet v. Legislature of State of La., 97-0212, p. 6 (La.App. 1st Cir.6/29/98), 713 So.2d 1199, 1202, writs denied, 98-2023, 98-2026 (La.11/13/98), 730 So.2d 934. Supervisory jurisdiction may be exercised to reverse a trial court's denial of a motion for summary judgment, and to enter summary judgment in favor of the mover. Charlet v. Legislature of State of La., 97-0212 at pp. 6-7, 713 So.2d at 1202. Because our review of the trial court's grant of the Department's motion will necessarily decide the issue presented in LP & L/Entergy's motion, we reason that judicial efficiency and the interests of justice are best served by exercising our supervisory jurisdiction to review the denial of LP & L/Entergy's motion for summary judgment. Thus, we treat Entergy's motion to appeal the portion of the trial court's judgment that denied its motion for summary judgment as an application for supervisory writs. Campbell v. Markel *537 American Ins. Co., 00-1448, p. 4 (La.App. 1st Cir.9/21/01), 822 So.2d 617, 620, writ denied, 01-2813 (La.1/4/02), 805 So.2d 204.

II. ANALYSIS
LP & L purchased the raw uranium and engaged in multiple business transactions related to the raw uranium outside of Louisiana before it transported its finished nuclear fuel product into this state for consumption or storage within this state. Thus, Louisiana's use tax law is applicable. A use tax is the tax paid for the use, consumption, or storage of tangible personal property in the state of Louisiana, and is levied in lieu of a sales tax. La. R.S. 47:302 A(2); La. R.S. 47:331(A); La. R.S. 47:301(18).[6]
The state of Louisiana assesses a use tax on the "cost price" of items used in the state and a sales tax on the "sales price" of items sold in the state. La. R.S. 47:302 A and La. R.S. 47:331 A; Pensacola Const. Co. v. McNamara, 558 So.2d 231, 232 (La.1990). Additionally, the state assesses a tax upon sales of services in this state as prescribed in Louisiana Revised Statutes 47:302 C and 47:331 C.[7] The purpose of *538 the Louisiana sales-use tax scheme is to make all tangible property used or consumed in the state subject to a uniform tax burden regardless of whether it is acquired within the state, and thus subject to sales tax, or from out-of-state, making it subject to use tax at the same rate. See Halliburton Oil Well Cementing Co. v. Reily, 373 U.S. 64, 66, 83 S.Ct. 1201, 1202, 10 L.Ed.2d 202 (1963); Canulette v. Diamond M. Drilling Co., 551 So.2d 52, 53-54 (La.App. 1st Cir.1989).
For many years, however, our Louisiana Sales Tax Law has exempted from the sales and use tax base such items as electric power, energy, and energy sources used for boiler fuel. Specifically, by Acts 1980, No. 159, the Louisiana Legislature amended and reenacted Paragraph (4) of Section 305 of Title 47 of the Louisiana Revised Statutes of 1950, relative to exemptions from the state sales and use tax, which provided in pertinent part:
The sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this Chapter: ... electric power or energy, and any materials and energy sources used to fuel the generation of electric power ... all energy sources when used for boiler fuel....
Pursuant to Acts 1984, No. 183, the legislature further amended and reenacted Paragraph (4) of Section 305 of Title 47 to provide an exemption for:
electric power or energy and any materials or energy sources used to fuel the generation of electric power for resale or used by an industrial manufacturing plant for self-consumption or cogeneration [and for] all energy sources when used for boiler fuel ....
Then, pursuant to the provisions of House Concurrent Resolution 55 of the 1986 Regular Session, the Legislature provided for a one-year suspension of these exemptions from the additional one percentum tax levied pursuant to La. R.S. 47:331 recognizing the following in the resolution:
WHEREAS, whenever the condition of the state fisc would permit the Legislature of Louisiana has attempted to afford tax relief to its citizenry in the form of various exemptions from the sales and use tax; and
WHEREAS, due to the unforeseen crisis in oil and gas production and prices and the resulting drop in state revenues, the financial condition of the state is now such that the monies lost due to these exemptions are critically needed to avoid *539 cessation of vital services to those same citizens.
THEREFORE, BE IT RESOLVED that the Legislature of Louisiana hereby suspends the exemptions from the additional one percentum tax levied pursuant to R.S. 47:331 including but not limited to the exemptions provided in Chapter 2 of Subtitle II of Title 47 of the Louisiana Revised Statutes of 1950 insofar as they are made applicable to the additional one percentum tax levied pursuant to R.S. 47:331 by virtue of the provisions of R.S. 47:332 ....
Although the exemptions were initially suspended for only a one-year period, the Legislature enacted legislation providing that the exemptions were "inapplicable, inoperable, and of no effect" for successive time periods beginning July 10, 1990, and extending through June 30, 2009. See La. R.S. 47:331 F-P. Additionally, the Legislature provided that the exemptions relative to the two percentum tax levied pursuant to the provisions of Louisiana Revised Statutes 47:302 were "in applicable, inoperable, and of no effect" for time periods between August 1988 through June 30, 2009. La. R.S. 47:302 N-R. We note the exemptions referenced under Louisiana Revised Statutes 47:305,[8] as they relate to the imposition of taxes pursuant to both Louisiana Revised Statutes 47:302 and 47:331, were suspended when the batches of nuclear fuel at issue arrived in Louisiana for use in LP & L's Waterford 3 plant during 1994 and 1995, the applicable years involved in the two suits we presently consider in this appeal.[9]
Additionally, by La. Acts 1989 1st Ex. Sess. No. 3, the Legislature broadened the state's tax base by increasing the number of transactions that were subject to sales tax. Act. No. 3 modified the definition of "sale" pursuant to Louisiana Revised Statutes 47:301(11), (now referenced in Subsection 12), to include "the fabrication of tangible personal property for consumers who furnish, either directly or indirectly, the materials used in fabrication work."
Following the initial suspension of the exemptions as they related to the imposition of tax pursuant to Louisiana Revised Statutes 47:331, the Department's Sales Tax Section performed an audit of LP & L regarding a separate batch of nuclear fuel previously brought into the state (not the subject of this appeal). The Department issued a proposed assessment, seeking additional use taxes. The assessment applied a 1% tax rate to the cost price of the batch of fuel and rejected Entergy's valuation of the cost price of the fuel. Entergy explains the Department took the position that the aggregate cost price of the natural uranium, the cost of the enrichment and conversion processes, the cost of the fabrication and related fabrication materials, minus associated finance charges formed the "cost price" for the purpose of imposing Louisiana's use tax pursuant to Louisiana Revised Statutes 47:302 and 47:331. After receiving assessments on subsequent batches, Entergy "recognized the issue of *540 the taxation of ... its nuclear fuel was a continuing issue ... and began timely (without assessment) paying under protest the additional use taxes claimed by the Department" for subsequent batches of fuel brought into the state.[10]
The Department imposed the tax based on its position that the fuel was put to "use" within the meaning of Louisiana Revised Statutes 47:301(18)(a). The Department contends that the cost of the conversion and enrichment processes are part of the fuel's "cost price" under 47:301(3)(a). Thus, it urges that the full "cost price" of the nuclear fuel rods, including the cost of the conversion and enrichment processes, are subject to Louisiana's use tax within the meaning of Louisiana Revised Statutes 47:301(19), 47:302, and 47:331.
Louisiana Revised Statutes 47:301(3)(a) provides:
`Cost price' means the actual cost of the articles of tangible personal property without any deductions therefrom on account of the cost of materials used, labor, or service cost, except those service costs for installing the articles of tangible personal property if such cost is separately billed to the customer at the time of installation, transportation charges, or any other expenses whatsoever, or the reasonable market value of the tangible personal property at the time it becomes susceptible to the use tax, whichever is less.
On appeal, Entergy does not specifically contend that the cost of the conversion and enrichment processes are not included within the statutory definition of "cost price," but rather that to include it within this definition is violative of Halliburton.
In Halliburton, the United States Supreme Court held that Louisiana's use tax, as it was applied to an out-of-state manufacturer, discriminated against interstate commerce in violation of the Commerce Clause of the federal Constitution. Therein, the Louisiana Collector of Revenue levied a use tax on the labor and shop overhead involved in the manufacture of special oil field equipment in Oklahoma, while admitting that a Louisiana manufacturer would not have paid taxes on the value of the labor and shop overhead. Likewise, regarding other transactions at issue, Louisiana's sales-use tax law provided for an exemption of certain "isolated sales" from the provisions of the applicable sales tax provisions, but it provided no such exemption for out-of-state "isolated sales." The Halliburton Court reasoned, "The conclusion is inescapable: equal treatment for in-state and out-of-state taxpayers similarly situated is the condition precedent for a valid use tax on goods imported from out-of-state." Halliburton, 373 U.S. at 70, 83 S.Ct. at 1204.
The Halliburton court referenced the "strict rule of equality" adopted in Henneford v. Silas Mason Co., 300 U.S. 577, 584-587, 57 S.Ct. 524, 527-529, 81 L.Ed. 814 (1937), a rule that has "controlled compensatory tax cases for over half a century." Associated Industries of Missouri v. Lohman, 511 U.S. 641, 652, 114 S.Ct. 1815, 1823, 128 L.Ed.2d 639 (1994); Halliburton, 373 U.S. at 73, 83 S.Ct. at 1206. In Silas Mason, the Court explained that the compensatory tax doctrine requires precision to ensure that, upon the "reckoning" of "account[s]," the "sum" on the interstate side of the ledger is "the same" as that on the intrastate side. 300 U.S. at 584, 57 S.Ct. at 527. More recently, the United *541 States Supreme Court has reiterated that strict parity is demanded by the compensatory tax doctrine, explaining that a compensatory tax leaves a consumer free to make choices "without regard to the tax consequences"; if he purchases within the State he may pay a tax, but if he purchases from outside the State he will pay a "tax of the same amount." Associated Industries of Missouri v. Lohman, 511 U.S. at 652, 114 S.Ct. at 1823 (1994) (citing Boston Stock Exchange v. State Tax Comm'n, 429 U.S. 318, 332, 97 S.Ct. 599, 608, 50 L.Ed.2d 514 (1977)) (emphasis added in quoted text).
The parties agree that Halliburton mandates equal treatment for in-state and out-of-state taxpayers similarly situated as a condition precedent for a valid use tax on goods imported from out of state. Thus, in accordance with Halliburton, the parties agree that the conversion and enrichment transactions are not subject to a use tax if the same transactions would not have been subject to a sales tax had they occurred within Louisiana. See also La. R.S. 47:301(19)(a).[11] The Department contends, however, that a complementary sales tax would have been imposed on the transactions at issue if they had occurred within the state, urging that the conversion and enrichment processes are fabrications of tangible personal property.[12] Thus, the Department maintains that the use tax at issue is not in contravention of Halliburton.
Entergy initially asserts that the conversion and enrichment transactions are not subject to use tax because these transactions if performed within the state would not have constituted taxable sales of services, as enumerated in Louisiana Revised Statutes 47:301(14), and therefore, they should be excluded from the "cost price" subject to use tax under Louisiana Revised Statutes 47:302 A(2) and 47:331 A(2). This argument is unsound. Although Entergy correctly asserts that the conversion and enrichment transactions are not listed under Louisiana Revised Statutes 47:301(14) as "sales of services" that would be taxable pursuant to Louisiana Revised Statutes 47:302 C and 47:331 C, that point is not determinative of whether the transactions are generally subject to sales tax under other provisions of Louisiana's Sales Tax Law. In addition to imposing tax upon sales of services, Louisiana's Sales Tax Law also imposes tax upon "the sale at retail, the use, the consumption, the distribution, and the storage for use or consumption in this state, of each item of tangible personal property." La. R.S. 47:302 A. This tax is levied on the "sales price of each item or article of tangible personal property when sold at retail in this state." La. R.S. 47:302 A(1); La. R.S. 47:331 A(1). "Retail sale" or "sale at retail" means "a sale to a consumer or to any other person for any purpose other than for resale as tangible personal property." La. R.S. 47:301(10)(a)(i). Louisiana Revised Statutes 47:301(12) provides the pivotal definition of "sale," in pertinent part, as follows:

*542 [A]ny transfer of title or possession, or both, exchange, barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property, for a consideration, and includes the fabrication of tangible personal property for consumers who furnish, either directly or indirectly, the materials used in fabrication work.... (Emphasis added.)
Further responding to the Department's contention that the conversion and enrichment processes would be subject to a complementary sales tax if the transactions had occurred within the state, Entergy argues that neither the conversion process nor the enrichment process constitutes fabrication under the definition of "sale" because the plain meaning of this term is "to construct, build, or assemble components into a whole." It urges that neither the conversion nor enrichment processes involve the combining of materials or parts to make a new product.
The starting point for the interpretation of any statute is the language of the statute itself. When a statute is clear and unambiguous and its application does not lead to absurd consequences, the statute is applied as written, and no further interpretation may be made in search of legislative intent. See La. C.C. art. 9; La. R.S. 1:4; Richard v. Hall, 03-1488, p. 22 (La.4/23/04), 874 So.2d 131, 148. When a law is susceptible of different meanings, "it must be interpreted as having the meaning that best conforms to the purpose of the law." La. C.C. art. 10; Palmer v. Louisiana State Bd. of Elementary and Secondary Educ., 02-2043, p. 5 (La.4/9/03), 842 So.2d 363, 367.
Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. La. R.S. 1:3. "It is a well-established principle of statutory construction that absent clear evidence of a contrary legislative intention, a statute should be interpreted according to its plain language." Cleco Evangeline, LLC v. La. Tax Comm'n, 01-2162, p. 5 (La.4/3/02), 813 So.2d 351, 354. In interpreting a statute, a court must give the words of a law their generally prevailing meaning. Id. Further, the meaning of a word in a statute must be determined within the context of the whole statute. Cox Cable New Orleans, Inc. v. City of New Orleans, 624 So.2d 890, 894 (La.1993).
The disputed term in this case is "fabrication." Because Louisiana's Sales Tax Law does not statutorily define this term, we must refer to dictionary sources for its definition. Dictionaries are a valuable source for determining the "common and approved usage" of words. Gregor v. Argenot Great Cent. Ins. Co., 02-1138, p. 7 (La.5/20/03), 851 So.2d 959, 964. Fabrication generally refers to the act or process of fabricating. Webster's New International Dictionary 811 (3d ed.1993). To "fabricate" is broadly defined as "1 a: to form by art and labor: MANUFACTURE, PRODUCE ... b: to form into a whole by uniting parts: CONSTRUCT, BUILD... 2 a: to make, shape, or prepare (parts) according to standardized specifications so as to be interchangeable ... b: to cause (raw material or stock) to be manufactured: SHAPE ... 3 a: INVENT, FORMULATE... CREATE .... (Emphasis added.) Webster's New International Dictionary 811 (3d ed.1993). The verb "manufacture" is defined as: "1: to make (as raw material) into a product suitable for use... 2 a: to make from raw materials by hand or by machinery ... b: to produce according to an organized plan and with division of labor .... Webster's New International Dictionary 1378 (3d ed.1993). Fabrication is also defined, in pertinent part as: 1) To make; create; 2) To construct *543 by combining or assembling diverse, typically standardized parts: fabricate small boats. The American Heritage Dictionary of the English Language (4th ed.2000).
Based on these and other similar dictionary meanings, Entergy argues the plain meaning of the word "fabrication" is to build or construct something, usually by assembling parts into a whole. It asserts that neither the conversion nor enrichment processes involved the combining of materials or parts into a new product. It argues nothing new was made or created, and nothing was built or constructed in these two processes.
Determining the statutory meaning of the term "fabrication" is a legal decision subject to de novo review by this court. See Cleco Evangeline, LLC v. Louisiana Tax Comm'n, 01-2162 at p. 3, 813 So.2d at 353. Accordingly, considering the definitions of fabrication addressed above, we determine whether the conversion and enrichment processes involved the creation, making, or manufacturing of something new. The parties' stipulated description of the processes involved establishes that during the conversion process, a gas, the UF6, was manufactured or created from the solid "yellow cake" raw uranium. Accordingly, we find this process meets the broad definition of fabrication referenced above, and the trial court correctly concluded that the conversion process was a "fabrication" within the meaning of Louisiana Revised Statute 47:301(12). Additionally, the record establishes that during the enrichment process, a filtered or enriched gas was mechanically manufactured or created from the UF6. Accordingly, we also find this process constitutes a "fabrication" within the meaning of Louisiana Revised Statute 47:301(12). We reach these conclusions in light of the ordinary meaning of fabrication and in light of the general purpose of the tax statute to impose the sales/use tax upon the transaction(s) by which the ultimate consumer receives the particular item. See Traigle v. PPG Industries, Inc., 332 So.2d 777, 780 (La.1976). LP & L was the ultimate consumer of the nuclear fuel, and under Louisiana Sales Tax Law, it is required to pay use tax on the full "cost price" of the fuel, including the fabricating costs associated with its conversion and enrichment. A complementary sales tax would have been imposed on these transactions if they had occurred within the state, and the Department's imposition of a use tax on these transactions pursuant to Louisiana Revised Statutes 47:302 and 47:331 is not violative of Halliburton.

III. CONCLUSION
For these reasons, we affirm that portion of the trial court's judgment that granted the Department's motion for summary judgment. Because we reject Entergy's contentions that the transactions at issue were not subject to Louisiana's use tax, we deny its application for supervisory writs. All costs associated with the proceedings in this court are to be paid by Entergy.
AFFIRMED; WRIT DENIED.
GUIDRY, J., dissents and will assign reasons.
GUIDRY, J., dissenting.
I disagree with the majority's conclusion that the conversion and enrichment transactions at issue are subject to a use tax under Louisiana's Sales Tax Law. The majority correctly states that in accordance with Halliburton Oil Well Cementing Co. v. Reily, 373 U.S. 64, 83 S.Ct. 1201, 10 L.Ed.2d 202 (1963), the conversion and enrichment transactions are subject to a use tax only if the same transactions would have been subject to a sales tax had they *544 occurred within Louisiana. However, the majority determines, incorrectly in my view, that based on the definition of "sale" as outlined in La. R.S. 47:301(12), the conversion and enrichment processes constitute "fabrication" of tangible personal property, as that term is commonly understood, and therefore these transactions would be subject to a sales tax if they occurred in Louisiana and a such, are subject to a use tax pursuant to La. R.S. 47:302 and 47:331. The majority relies on the parties' stipulations, which it characterizes as stating that the conversion and enrichment processes involved the manufacturing or creation of a gas and the further manufacturing or creation of a filtered or enriched gas. However, the parties did not stipulate that anything was "manufactured" or "created" during these processes. Rather, the parties stipulated that uranium in solid form is converted to a gas. Further, the parties stipulated that this gas is then enriched by increasing the percentage of one of its component isotopes. The description of these processes, as stipulated, indicates that the original product was merely transformed from one physical state to another. Contrary to the majority's assertion, no "new" product was created; only the form of the original product was changed. Based on the commonly understood definition and meaning of "fabrication" as outlined by the majority, these transactions clearly do not constitute "fabrication" within the meaning of La. R.S. 47:301(12) and as such, are not subject to the imposition of a use tax under 47:302 and 47:331. See Halliburton, 373 U.S. at 70, 83 S.Ct. at 1204. Therefore, the trial court erred in granting the Department's motion for summary judgment, and in failing to grant the cross motion for summary judgment filed by Entergy.
For the foregoing reasons, I respectfully dissent.
NOTES
[1] LP & L filed both petitions in these consolidated matters. Although the record does not contain a formal substitution, whereby the trial court formally substituted Entergy as the plaintiff in these matters, Entergy filed multiple pleadings naming itself as the mover and indicating that it was formerly LP & L. The Department's pleadings likewise referred to Entergy as the plaintiff. Accordingly, in setting forth the facts of this case, we refer to both LP & L and Entergy, but we recognize that LP & L is the named plaintiff in both petitions and in the July 16, 2004 judgment presently considered on appeal. We acknowledge Entergy's right to appeal pursuant to Louisiana Code of Civil Procedure article 2086.
[2] In the suit bearing our docket number 2004 CA 2361, LP & L seeks recovery of $1,227,893 in Louisiana use tax, portions of which were paid under protest on February 21, 1994, and on March 21, 1994. In the suit bearing our docket number 2004 CA 2362, LP & L seeks recovery of $1,437,123 in Louisiana use tax that was paid under protest on September 20, 1995.
[3] The petitions also sought to exclude the costs of the fabrication services from the taxable base of Batches J and K, but on appeal, Entergy has conceded that the final fabrication process constitutes "fabrication" pursuant to Louisiana Revised Statutes 47:301(12) and is subject to the applicable use taxes.
[4] Entergy and the Department further stipulated that the enrichment services and the fabrication services were performed by separate, independent, and non-affiliated parties under separate and independent contracts.
[5] The judgment considered in this appeal disposed of six consolidated suits filed by LP & L, including the two suits currently under consideration pursuant to this appeal. By order dated April 28, 2005, this court dismissed the appeal as to the other four suits because as to those suits, the July 16, 2004 judgment granting the Department's motion for summary judgment was a partial judgment that was not immediately appealable.
[6] Louisiana Revised Statutes 47:301(18)(a)(i) provides in pertinent part that "`use' means and includes the exercise of any right or power over tangible personal property incident to the ownership thereof."

Louisiana Revised Statutes 47:302A provides:
There is hereby levied a tax upon the sale at retail, the use, the consumption, the distribution, and the storage for use or consumption in this state, of each item or article of tangible personal property, as defined herein, the levy of said tax to be as follows:
(1) At the rate of two per centum (2%) of the sales price of each item or article of tangible personal property when sold at retail in this state; the tax to be computed on gross sales for the purpose of remitting the amount of tax due the state, and to include each and every retail sale.
(2) At the rate of two per centum (2%) of the cost price of each item or article of tangible personal property when the same is not sold but is used, consumed, distributed, or stored for use or consumption in this state; provided there shall be no duplication of the tax.
Louisiana Revised Statutes 47:331A provides in part:
In addition to the tax levied by R.S. 47:302(A) and collected under the provisions of Chapter 2 of Subtitle II of Title 47 of the Louisiana Revised Statutes of 1950, there is hereby levied an additional tax upon the sale at retail, the use, the consumption, the distribution, and the storage for use or consumption in this state of each item or article of tangible personal property, as defined in Chapter 2 of Subtitle II of Title 47 of the Louisiana Revised Statutes of 1950; the levy of said tax to be as follows:
(1) At the rate of ninety-seven one hundredths of one percentum of the sales price of each item or article of tangible personal property when sold at retail in this state, the tax to be computed on gross sales for the purpose of remitting the amount of tax to the state, and to include each and every retail sale.
(2) At the rate of ninety-seven one hundredths of one percentum of the cost price of each item or article of tangible personal property when the same is not sold but is used, consumed, distributed, or stored for use or consumption in this state, provided that there shall be no duplication of the tax.
Louisiana Revised Statutes 47:321, which imposes an additional one percentum sales/use tax, was added by Acts 1996, no.5, § 2 and was not applicable at the time of the transactions at issue in these cases.
[7] Louisiana Revised Statutes 47:302 C(1), provides, "There is hereby levied a tax upon all sales of services, as herein defined, in this state, at the rate of two percent of the amounts paid or charged for such services." Louisiana Revised Statutes 47:331 C(1), provides, in part, "In addition to the tax levied on sales of services by R.S. 47:302(C) and collected under the provisions of Chapter 2 of Subtitle II of this Title, there is hereby levied a tax upon all sales of services, as defined by said Chapter 2 of Subtitle II of this Title, in this state, at the rate of ninety-seven one hundredths of one percent of the amounts paid or charged for such services."

Louisiana Revised Statutes 47:301(14) provides, in pertinent part, that "sales of services" means and includes the following:
(a) The furnishing of sleeping rooms, cottages or cabins by hotels.
(b)(i) The sale of admissions to places of amusement, to athletic entertainment ... and recreational events, and the furnishing for dues, fees, or other consideration of the privilege of access to clubs or the privilege of having access to or the use of amusement, entertainment, athletic, or recreational facilities ....
(c) The furnishing of storage or parking privileges by auto hotels and parking lots.
(d) The furnishing of printing or overprinting, lithographic, multilith, blue printing, photostating or other similar services of reproducing written or graphic matter.
(e) The furnishing of laundry, cleaning, pressing and dyeing services ....
(f) The furnishing of cold storage space....
(g) (i)(aa) The furnishing of repairs to tangible personal property ....
The parties do not contest that the conversion and enrichment transactions are not included within this list of services.
[8] Pursuant to Acts 1986, No. 677, § 1, the numbered paragraphs of Section 305 were redesignated as subsections A to H, and the referenced exemptions are currently found in Louisiana Revised Statutes 47:305 D(1)(d) and (h).
[9] The parties apparently do not contest that the taxable moment occurs "when the property has been withdrawn from interstate commerce and has become part of the mass of the property of the taxing state." Mouton v. Klatex, Inc., 238 So.2d 1, 3 (La.App. 1st Cir.1970), writ refused, 256 La. 873, 239 So.2d 365 (1970), appeal dismissed, 401 U.S. 968, 91 S.Ct. 1192, 28 L.Ed.2d 318 (1971); McNamara v. D.H. Holmes Co., Ltd., 505 So.2d 102, 105 (La.App. 4th Cir.1987), writ denied, 506 So.2d 1224 (La.1987).
[10] The first petition in these consolidated matters was based on a payment under protest made in 1990.
[11] Louisiana Revised Statutes 47:301(19) states, in part, "No use tax shall be due to or collected by: (a) The state on tangible personal property used, consumed, distributed, or stored for use or consumption in the state if the sale of such property would have been exempted or excluded from sales tax at the time such property became subject to the taxing jurisdiction of the state."
[12] Louisiana Revised Statutes 47:301(16)(a) provides, "`Tangible personal property' means and includes personal property which may be seen, weighed, measured, felt or touched, or is in any other manner perceptible to the senses." The parties do not dispute that the batches of nuclear fuel at issue constitute tangible personal property.