STEPHENS, J.
*179 Defendant, Hixson Autoplex of Monroe, LLC, filed a writ application in this court following the denial of its motion for summary judgment by the Monroe City Court, Parish of Ouachita, State of Louisiana, in a lawsuit for damages brought by Janella Davis. The writ was granted to docket. For the following reasons, we grant the writ, reverse the trial court and grant defendant's motion for summary judgment, dismissing Davis's suit with prejudice.
FACTS
Davis filed a petition for damages on July 21, 2016, alleging that Hixson Autoplex of Monroe, LLC ("Hixson"), failed to properly diagnose problems with her 2006 BMW 5 Series (the "vehicle") and its failure to do so resulted in further damage to the vehicle. In response, Hixson filed a dilatory exception of vagueness which resulted in the parties entering into a consent judgment to clarify that the sole act of negligence alleged by Davis is "failure to diagnose the problem of the vehicle." Hixson subsequently filed an answer denying the allegations and a motion for summary judgment asserting Davis would not be able to meet her burden at trial. That motion was denied and Hixson sought a supervisory writ, which this court granted to docket.[1]
The vehicle was purchased by Davis in 2014 for $13,670.00 and had a history of repairs prior to Davis purchasing it. On June 21 or 22 of 2015, Davis noticed a temperature warning light appear while driving the vehicle, and she had it towed to Hixson. John Wheat, a certified master technician employed by Hixson, inspected the vehicle and found there was a leak at the coolant pump and the radiator cap was faulty. With Davis's approval, Wheat replaced the coolant pump, thermostat, radiator cap, vent pipe, and hose clamp for a total cost of $1,550.00 to Davis.
The vehicle continued to give the same temperature warning, causing Davis to have it towed and inspected twice more, on July 6 and 9, 2015. On July 6, Davis was told the problem was resolved by adding another clamp on a hose, and on July 9, she was told the problem was an air pocket because they did not see where coolant was leaking. On July 10, 2015, the engine light came on. Hixson was unable to inspect the vehicle the following day because it was a Saturday. The engine light subsequently went off.
Then on July 16, 2015, the engine light came back on, and the vehicle began vibrating. Davis drove it to Hixson where an inspection revealed that on one occasion the vehicle exhibited a permanent fault caused by a misfire with cylinder cutout. Davis was told the problem was unrelated to the prior coolant problem and was probably caused by a faulty ignition coil. No work by Hixson was performed at this time.
The next day, the coolant light came on, and Davis's husband returned the vehicle to Hixson. Hixson was unable to detect a leak, so it placed dye in the car in an attempt to determine where the coolant was going. By the time Davis's husband got home, he observed no coolant remained in the vehicle.
On July 20, 2015, Davis's husband added coolant to the vehicle at which time white smoke appeared; they had the vehicle towed back to Hixson. Wheat inspected the vehicle and determined that due to the continued problems with the coolant system, *180 the next step to address the issue was to completely disassemble and inspect the entire coolant system. Hixson estimated it would cost approximately $1,500.00 to have the entire coolant system disassembled for diagnosis. Davis claims Hixson informed her at this time that it believed the vehicle may have a cracked head from when it initially came to Hixson and it was the engine that needed to be broken down for diagnosis, not the coolant system. Either way, Davis did not authorize the work by Hixson and none was performed.
Davis subsequently took the vehicle to another repairmen, Sedric Bosley, who disassembled the engine and discovered the engine block was cracked which required the engine to be replaced. Davis purchased a used engine for $2,850.00 which Bosley installed. She paid an additional $2,300.00 in parts and labor in connection with replacing the engine.
Davis brought a suit for damages against Hixson, alleging that Hixson was negligent in failing to properly diagnose the problem with her vehicle and that its negligence caused her vehicle to continue to "run hot," which then caused her engine block to crack. In response, Hixson filed an answer and motion for summary judgment. In support of its motion, Hixson attached a memorandum, a certified copy of the consent judgment clarifying the sole allegation of failure to diagnose, and an affidavit executed by Wheat wherein he detailed the precise actions taken by Hixson on Davis's vehicle. Davis did not file an opposition or any documents in opposition to Hixson's motion for summary judgment and made no objections to the documents Hixson filed in support of its motion.
A hearing on the motion was subsequently held on September 19, 2017, and the motion was denied orally at the conclusion of the hearing on September 19, 2017. Hours after the hearing and the denial of Hixson's motion, Davis filed into the record two affidavits executed by herself and Sedric Bosley. Thereafter, Hixson filed an application for supervisory writ that this court granted on December 7, 2017. Subsequently, on December 22, the trial court signed a judgment reducing its previous oral denial of the motion to writing.
DISCUSSION
Hixson asserts in its first two assignments of error that the trial court erred by denying its motion for summary judgment despite the fact that Davis failed to file an opposition or introduce evidence, and that it erred by considering filings in the record that were not introduced by either party in either support or opposition to the motion. We agree.
The denial of a motion for summary judgment is an interlocutory judgment that is not appealable, but may be considered at the appellate court's discretion under its plenary powers to exercise supervisory jurisdiction over the trial courts. Louisiana Power & Light Co. v. Slaughter , 2004-2361 (La. App. 1 Cir. 11/4/05), 917 So.2d 532, writ denied , 2006-0217 (La. 4/24/06), 926 So.2d 550. When the overruling of an exception is arguably incorrect, a reversal will terminate the litigation, and there is no dispute of fact to be resolved, judicial efficiency and fundamental fairness to the litigants dictate that the merits of the application for supervisory writs should be decided in an attempt to avoid the waste of time and expense of a possibly useless future trial on the merits. Herlitz Const. Co. v. Hotel Investors of New Iberia , 396 So.2d 878 (La. 1981) ; Csaszar v. Nat'l Cas. Co., 2014-1273 (La. App. 3 Cir. 11/4/15), 177 So.3d 807, 809, writ denied , 2015-2221 (La. 1/25/16), 185 So.3d 752.
*181 Summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). It is appropriate when, upon consideration of the motion, memorandum, and supporting documents, there are no genuine issues as to material fact, and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A material fact is one whose existence or non-existence is essential to the cause of action because it determines the outcome. Jones v. Estate of Santiago , 2003-1424 (La. 4/14/04), 870 So.2d 1002 ; Garsee v. Bowie , 37,444 (La. App. 2 Cir. 8/20/03), 852 So.2d 1156. No genuine issue exists where, on the evidence presented, a reasonable person can reach only one conclusion; thus there is no need for trial. Jones, supra .
While the mover bears the burden of proof for the motion, if the mover will not bear the burden at trial, then not all elements of the action need be negated in order for the mover to prevail. La. C.C.P. art. 966(D)(1). Instead, the mover need only show that the claimant lacks factual support for one or more elements of the claim. Id. The mover can ordinarily meet this burden by submitting affidavits or pointing to the lack of factual support for its opponent's case. Samaha v. Rau , 2007-1726 (La. 2/26/08), 977 So.2d 880 ; Sonnier v. Gordon , 50,513 (La. App. 2 Cir. 4/13/16), 194 So.3d 47. The burden then shifts to the nonmover who must produce factual evidence sufficient to show there is a genuine issue of material fact or that it will be able to meet its evidentiary burden at trial. La. C.C.P. art. 966(D)(1). An opposition to a motion for summary judgment and memorandums and documents filed in support must be filed and served on the parties no less than 15 days prior to trial. La. C.C.P. art. 966(B)(2). The failure of the nonmoving party to produce evidence of a material factual dispute mandates the granting of the motion for summary judgment. Samaha, supra ; Sonnier , supra.
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Samaha, supra .
As the mover, Hixson carried the initial burden of proof at the hearing on the motion for summary judgment. However, as the defendant not bearing the burden of proof at trial, Hixson was not required to negate all essential elements in Davis' claims; rather, it needed only to point out to the court the absence of factual support for one or more elements essential to Davis's claim before the burden of proof shifted to Davis. Hixson followed the proper procedure for providing factual support for its motion for summary judgment, as outlined in La. C.C.P. art. 966(D)(2).
As stated, Hixson's motion for summary judgment was supported by Wheat's affidavit. Wheat's affidavit sufficiently showed that Hixson followed the proper procedure for diagnosing the problems with the vehicle and Davis would be unable to prove at trial that Hixson's failure to diagnosis the problems with the vehicle was the result of negligence. In his affidavit, Wheat states he is a certified master technician with over 31 years of experience and a college degree in automotive science. He further states he is a certified technician of BMW vehicles and has received extensive training on how to diagnose and repair BMW vehicles, including the BMW 5 Series for the 2006 model year. Wheat provided a service and repair history of the vehicle and detailed descriptions of Hixson's contact with the vehicle on the following relevant dates: on or about June 22, 2015; July 16, 2015; and, on or about July 20, 2015. He described the "thorough multi-point inspection" process he used to *182 diagnose the vehicle, including filling, bleeding, and pressure testing of the coolant system. He stated the vehicle was inspected again and test driven at the conclusion of all repairs, and if at any time during the post-repair inspection or test drive the need for additional repairs arose, he would have recommended those repairs to Davis. Wheat further averred, however, that Davis refused to authorize the repairs recommended by Hixson on July 16 and July 20 and had previously refused to authorize repairs recommended by Hixson on a prior occasion in 2014 following an inspection unrelated to this suit brought by Davis. Wheat averred all diagnostics and repairs performed by Hixson were properly performed in accordance with BMW's specifications. The detailed facts contained in Wheat's affidavit do not materially differ from those asserted by Davis in her petition or answers to interrogatories and clearly point out to the court that Davis cannot provide a factual support to prove that Hixson's failure to diagnose the problem with vehicle was negligent. Furthermore, given that Davis refused the repairs recommended by Hixson on multiple occasions, Davis cannot provide the factual support to prove that Hixson's alleged negligence was the proximate cause of the damages claims. Thus, Hixson successfully met its initial burden of proof, in accordance with La. C.C.P. art. 966(D)(1), and the burden, therefore, shifted to Davis.
In response to Hixson's motion, Davis did not file an opposition, a memorandum or any documents in support of an opposition; nor did she object to any of the documents filed in support of Hixson's motion. Louisiana C.C.P. art. 966 was amended and reenacted in 2015, effective January 1, 2016; these revisions did not change the legal standard for summary judgment or the technicalities of the burdens of proof. Forstall v. City of New Orleans , 2017-0414 (La. App. 4 Cir. 1/17/18), 238 So.3d 465. However, the revisions did change the rule regarding the evidence and supporting documents that can be introduced and considered by a court in deciding a motion for summary judgment. Id. This change in the law is reflected in La. C.C.P. art. 966(D)(2), which provides:
The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. (Emphasis added).
This revision changes the law by no longer allowing a court to consider the record as a whole when deciding a motion for summary judgment. Forstall , supra. Louisiana C.C.P. art 966(A)(4) provides the exclusive list of documents that may be filed in support of or in opposition to the motion-pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. Reference to their existence elsewhere in the record is not sufficient. The documents must specifically be filed in support of or in opposition to the motion in order for the court to consider them. In Forstall , the appellate court held that the movant in a motion for summary judgment did not carry his initial burden when he failed to attach any documents in support of his motion and merely referenced in his memorandum in support of his motion evidence located elsewhere in the record-previously filed exhibits and testimony from a bifurcated trial. Forstall , supra at 472.
By failing to file an opposition, a memorandum or any documents in support of an opposition, Davis relied only on the allegations in her petition and answers to interrogatories that were filed elsewhere in the record as proof of the existence of a *183 genuine issue of material fact. This is not sufficient and is inconsistent with the requirements of La. C.C.P art 996(B)(2) and (D)(2). Likewise, the trial court failed to follow the proper procedure for considering a motion for summary judgment as outlined in La. C.C.P art 996(D)(2). In ruling on the motion, the trial court was permitted to consider only those documents filed in support of opposition to the motion for summary judgment. Here, since no documents were filed by Davis, the only documents to be considered were those Hixson filed in support of its motion, i.e. , the certified copy of the consent judgment confirming Davis's sole allegation was failure to diagnose, and Wheat's affidavit. However, the trial court stated in its oral ruling at the hearing on the motion that its denial of Hixson's motion was based on its review of the record and the pleadings therein. This was procedurally incorrect and in error. Therefore, Davis did not meet the burden of proof required by La. C.C.P art 996(D)(1) because she introduced no documents or evidence in opposition to Hixson's motion that contained factual support sufficient to establish the existence of a genuine issue of material fact or that she would be able to prevail at trial.
Accordingly, we conclude Hixson met its initial burden and showed there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Davis failed to show any genuine issue of material fact; thus, we grant Hixson's motion for summary judgment.[2]
CONCLUSION
Accordingly, for the foregoing reasons, we grant the writ application. In so doing, we reverse the trial court's denial of the motion for summary judgment filed by defendant, Hixson Autoplex of Monroe, LLC, and grant its motion for summary judgment, dismissing with prejudice the claims of plaintiff, Janella Davis. Costs are assessed to Janella Davis.
WRIT GRANTED. REVERSED AND RENDERED.

In accordance with La. C.C.P. art. 966(H), the case was assigned to briefing and the parties were afforded opportunity of oral argument.

In light of our above findings, we pretermit discussion of Hixson's third assignment of error.