Judgment rendered August 10, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,686-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

LOUIS C. MINIFIELD                    Plaintiff-Appellant

versus

TERRY L. GARDNER, MAYOR               Defendant-Appellees
FOR THE CITY OF MINDEN
AND THE CITY OF MINDEN

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Webster, Louisiana
Trial Court No. 78,742

Honorable R. Lane Pittard, Judge

* * * * *

MINIFIELD & HARPER                    Counsel for Appellant
By:  Pamela Rene Harper

PETTIETTE, ARMAND & DUNKELMAN         Counsel for Appellees
By:  Edwin Henry Byrd, III

* * * * *

Before MOORE, COX, and MARCOTTE, JJ.

**MOORE, C.J.**

Louis C. Minifield, the former city attorney for the City of Minden, Louisiana, sought a declaratory judgment to annul the mayor's proclamation that Minifield had resigned as city attorney and that a new city attorney had been appointed; he also demanded recognition as city attorney, damages, and attorney fees. Terry L. Gardner, the mayor of Minden, filed a motion for summary judgment, which the district court granted, dismissing all claims. Minifield now appeals; for the reasons expressed, we affirm.

## FACTUAL BACKGROUND

In January 2019, the Minden City Council elected Minifield as city attorney, to serve through the end of 2022. However, on May 6, 2020, Minifield advised Mayor Gardner by letter that he would retire from the position effective May 31, 2020. Mayor Gardner accepted the resignation and congratulated him. Minifield also notified the Municipal Employees Retirement System ("MERS") of his imminent resignation.

Mayor Gardner called seven city council meetings between May 4 and May 20, each with an agenda item of replacing the city attorney, but none of these meetings had a quorum present; it was the height of the first COVID-19 lockdown. Feeling that the office of city attorney was vital to the operation of the city, Mayor Gardner met with a candidate, Jimmy Yocom, and decided he would be a good fit.

On May 21, Mayor Gardner issued a proclamation declaring a state of public health emergency, invoking the authority of La. R.S. 29:737, suspending the section of the Minden Code of Ordinances, § 2-116, that required the city council to elect the city attorney, and announcing that

Jimmy Yocom would serve as city attorney. On May 27, he sent Yocom's paperwork to the city clerk, and it was approved.

Meanwhile, Minifield apparently had a change of heart. The same day that Yocom's hiring was approved, May 27, Minifield wrote MERS to advise that he did "hereby withdraw [his] application for retirement that was to be effective June 1, 2020." Mayor Gardner testified by deposition that he received a fax copy of this around 8:00 p.m. on May 28; however, he had already accepted the resignation and hired somebody else, so he advised MERS that the position was no longer available. MERS refused to reinstate Minifield's contributions and accrual of benefits.

## PROCEDURAL HISTORY

Minifield filed this petition on July 27, 2020, against Mayor Gardner, in his capacity as mayor, and against the city. He alleged that the mayor (1) did not hire Yocom until *after* he received Minifield's withdrawal of resignation; (2) did not follow the procedure of R.S. 29:737, in that he did not first notify the parish president, the Governor's Office of Homeland Security, or the Webster Parish clerk of court of the state of emergency; and (3) caused the lack of quorum at the city council meetings by also attempting to fill the vacant District A seat, when other council members did not approve of his pick, so they stayed away from the meetings. Minifield argued that Mayor Gardner had manipulated the Emergency Response statute, R.S. 29:737, and M.C.O. § 2-116 to remove him as city attorney. He demanded a declaration that the mayor's proclamation of May 21 was null and void, as was the hiring of Yocom; that Minifield should be restored to the position of city attorney, with backpay and all retirement benefits through MERS; and a prayer for general damages.

2

Mayor Gardner and the city moved for summary judgment, attaching his own affidavit; copies of the emergency declaration; and copies of Minifield's resignation letter and attempted withdrawal thereof.  He argued that once an employee has tendered his resignation, and the employer has accepted it, he cannot unilaterally rescind it, citing *Stern v. New Orleans City Planning Comm'n*, 03-0817 (La. App. 4 Cir. 9/17/03), 859 So. 2d 696, and *Palmisano v. Dept. of Fleet Mgmt., Parish of Jefferson*, 97-745 (La. App. 5 Cir. 12/10/97), 704 So. 2d 862, *writ denied*, 98-0031 (La. 3/20/98), 715 So. 2d 1208.  In essence, he urged, no facts that Minifield could offer would alter the situation.

Minifield opposed the motion, arguing that under § 2-116, the city council, and not the mayor, is the appointing authority; the council has never delegated this authority to the mayor; the mayor had no authority to reject his rescission of resignation; and, the mayor did not comply with R.S. 29:737.  In support, Minifield offered the affidavits of six current or former city council members, all stating that the council "had never delegated its authority to the Minden Mayor or any other person in city government."  One affiant, District C council member Vincen Bradford, also stated that he refused to attend those city council meetings because the mayor was trying to "stack the deck" by naming his own pick as District A council member.

Mayor Gardner responded that nobody could contend that the COVID-19 situation was *not* an emergency and that the mayor could not exercise emergency power; the only claim was that he failed to communicate this to the parish president, and Minifield offered no evidence that the mayor failed to do so.  He also argued that council member Bradford's reason for boycotting meetings was irrelevant; there was still no quorum.  Finally,

3

Mayor Gardner objected to Minifield's summary judgment evidence: the affidavits stated legal conclusions, but no factual bases therefor.

Minifield filed a motion to strike Mayor Gardner's reply brief, urging that it asserted, for the first time, the mayor's emergency powers; he argued this was an inappropriate expansion of the pleadings, La. C.C.P. art. 966 F. The court referred Minifield's motion to the merits of the MSJ.

## ACTION OF THE DISTRICT COURT

At the hearing, the district court stated that Minifield's motion to strike, alleging expansion of the pleadings, was not "really of any consequence." The court further stated that *Stern v. New Orleans City Planning Comm'n*, *supra*, "seems to be on all fours": "the rule that came out of there is that the resignation cannot be just simply unilaterally rescinded." Next, § 2-116 refers only to *electing* the city attorney and does not require the city council's approval to accept his resignation. Finally, the COVID-19 issues were not really relevant; Minifield resigned, the city accepted his resignation, and he now had no claim against the mayor or the city.

The court granted summary judgment, dismissing all claims.

Minifield applied for a writ, which this court granted and remanded for perfection as an appeal, *Minifield v. Gardner*, 54,323 (La. App. 2 Cir. 10/21/21). He now raises two assignments of error.

## APPLICABLE LAW

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief sought by a litigant. *Murphy v. Savannah*, 18-0991 (La. 5/8/19), 282 So. 3d 1034. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of civil actions (except for certain domestic

4

matters) and is favored by our law. La. C.C.P. art. 966 A(2). A court must grant a motion for summary judgment if, after an opportunity for adequate discovery, the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 A(3); *Murphy v. Savannah*, *supra*.

The court may consider only those documents filed in support of or in opposition to the motion for summary judgment, and shall consider any documents to which no objection is made. La. C.C.P. art. 966 D(2); *Davis v. Hixson Autoplex of Monroe LLC*, 51,991 (La. App. 2 Cir. 5/23/18), 249 So. 3d 177. Supporting and opposing affidavits shall be made on personal knowledge and shall set forth facts as would be admissible in evidence. La. C.C.P. art. 967 A. An affidavit which is devoid of specific facts and based on conclusory allegations is not sufficient to defeat a summary judgment. *Murphy v. Savannah*, *supra*. Appellate review of a summary judgment is de novo, with the appellate court using the same criteria that governed the trial court's determination, i.e., whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. *Murphy v. Savannah*, *supra*.

A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause. La. C.C. art. 2747; *Hayes v. University Health Shreveport*, 21-01601 (La. 1/7/22), 332 So. 3d 1162. Once a public employee's voluntary resignation is accepted by the appointing authority, and the employee attempts to rescind his resignation, the appointing authority is under no obligation to accept the rescission. *Detillier v. Borne*, 15-129 (La.

5

App. 5 Cir. 9/23/15), 176 So. 3d 669; *Stern v. New Orleans City Planning Comm'n*, *supra*; *Palmisano v. Dept. of Fleet Mgmt.*, *supra*.

The appointment of a city attorney for the City of Minden is regulated by M.C.O. § 2-116, which provides:

**Sec. 2-116. – Appointment, qualifications, general duties.**

(a) The city council shall elect a licensed practitioner of law who resides in the city, who shall be the legal advisor of the city authorities in all matters properly pertaining to their municipal duties, who shall bring all suits in which the city is party plaintiff, and who shall defend all suits in which the city has been made party defendant. The city attorney shall generally look after the legal affairs of the city and act in cases where the interest of the city may require it. He shall also attend all regular meetings of the city council and special meetings when notified by the mayor. He shall be the prosecuting officer in city court.

(b) The city attorney shall hold office during the time for which the city council electing him has been elected.

The Emergency Response statute, La. R.S. 29:737 A, provides, in part:

[W]henever a situation develops within or outside of a municipality which the chief executive officer of the municipality determines requires immediate action to preserve the public peace, property, health, or safety within the municipality or to provide for continued operation of municipal government, nothing in this Chapter shall diminish the authority of the chief executive officer of the municipality to undertake immediate emergency response measures within the municipality to preserve the public peace, property, health, or safety within the municipality or to provide for continued operation of the municipal government. Whenever the chief executive officer of the municipality undertakes immediate emergency response measures because of a disaster or emergency, he shall immediately notify the parish president and advise him of the nature of the disaster or emergency and the emergency response measures being undertaken.

## DISCUSSION

By his first assignment of error, Minifield urges that the district court committed legal error "when it failed to consider the objection of mayor Terry Gardner and the city when they objected to paragraph number 6 of the affidavits of Theron W. Winzer, Magaline Quarles, Vincen Bradford, Wayne

6

Edwards and Terika Williams-Walker, and paragraph number 5 of the affidavit of Joseph 'Joe' Cornelius wherein they testified that the mayor is not the 'appointing authority' with regards to the city attorney's position." He contends that these affiants established that the city council is the appointing authority, and the council makes all decisions to "hire, fire, accept and/or reject a city attorney, and/or any recission [*sic*] of resignation and/or any recission [*sic*] of retirement by the city attorney; and that the Mayor is not the appointing authority." He contends that these affidavits created a genuine issue of material fact for trial.[1]

By its plain meaning, § 2-116 grants the city council the authority to *elect* the city attorney. It grants no other authority with respect to the city attorney, such as dismissing him or accepting his resignation or attempted rescission thereof. The personal beliefs of certain current and former council members that they possessed this authority were merely conclusory, as they did not set forth facts that would be admissible at trial. La. C.C.P. art. 967 A; *Murphy v. Savannah*, *supra*. On de novo review, we find no error in the district court's decision to disregard these affidavits. This assignment lacks merit.

By his second assignment of error, Minifield urges that the district court committed legal error "when it failed to consider paragraph numbers 4, 5 and 7 of the affidavits of Theron W. Winzer, Magaline Quarles, Vincen Bradford, Wayne Edwards and Terika Williams-Walker, and paragraph numbers 2, 3, 4 and 6 of the affidavit of Joseph 'Joe" Cornelius wherein they testified that the Minden City Council has never delegated its authority to the

---

[1] As phrased, this assignment seems to contend that the court erred in failing to rule on *Mayor Gardner's* objections, but the thrust of the argument is that the court erred in failing to consider *Minifield's* affidavits.

Minden Mayor, nor any other person in city government, and there was no objection." He contends that the court was required to consider these paragraphs because, under La. C.C.P. art. 966 D(2), they were never objected to. *Pottinger v. Price*, 19-0183 (La. App. 1 Cir. 10/23/19), 289 So. 3d 1047. He submits that once these are considered, they create a genuine issue whether the mayor could refuse Minifield's attempt to withdraw his resignation.

As noted above, the affiants' personal beliefs that they possessed authority greater than that conferred by § 2-116 were merely conclusory and did not set forth admissible facts, as required by La. C.C.P. art. 967 A. Even though Mayor Gardner did not object to the specific paragraphs of these affidavits, the court was not required to consider them. This assignment of error lacks merit.

In connection with both assignments, Minifield asserts that *Stern*, *Palmisano*, and *Detillier*, *supra*, are all distinguishable in that they were *civil service* cases in which the *appointing authority* refused to rehire the employee after a letter of resignation. Here, he contends, the *city council* was the appointing authority, and it never accepted his resignation; hence, the resignation was simply ineffective. However, § 2-116 does not grant the city council the power to accept or reject a resignation. Under Louisiana's at-will employment scheme, the employee is free to depart without assigning any cause. La. C.C. art. 2747. The running theme in the cited cases is that once he does so, he may not unilaterally withdraw the resignation. Once the city accepted the resignation and hired a new city attorney, it could not accept the attempted rescission. This argument lacks merit.

8

Finally, Minifield correctly shows that the M.C.O. does not explicitly assign the authority to fire, or accept the resignation of, the city attorney; this is not among the mayor's duties, § 2-27. However, the Emergency Response Statute, La. R.S. 29:737, confers special powers when the chief executive officer of the municipality determines that a situation has developed requiring immediate action to, among other things, provide for the continued operation of the municipal government. Owing to COVID-19, the governor declared a public health emergency on March 11, 2020, which was expanded to a stay-at-home order on March 22; this was in force when the events in this case occurred, until the entry of "Phase One" (very limited) reopening on May 15. See Governor's Proclamations 33 JBE 2020, 52 JBE 2020, 58 JBE 2020. In short, a state of emergency existed, and Minifield has made no showing that the acceptance of his resignation, and the appointment of a new city attorney, were not necessary for the continued operation of the city or that Mayor Gardner failed to notify the parish president of the measures being taken.

On the facts presented, we find no genuine issue of material fact and find that Mayor Gardner is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons expressed, the judgment is affirmed. All costs are to be paid by Louis C. Minifield.

**AFFIRMED**.

9